TAYLOR, COMPLAINANT, *v.* MOSLEY, JR., DEFENDANT.

Juvenile Court, Cuyahoga County.

No. 194868.   Decided October 30, 1961.

WOLDMAN, J. The complainant, an unmarried woman, has instituted a bastardy proceeding against the defendant. The examination of the complainant was held on May 9, 1961, in accordance with Section 3111.04, Revised Code. At this preliminary hearing the defendant entered a plea of "not guilty," and the matter is now pending for trial.

Subsequently, counsel for the complainant served upon the defendant a subpoena duces tecum ordering the defendant to

appear in the office of complainant's counsel for a deposition as if on cross-examination, under the statute.

On July 8, 1961, a hearing was scheduled to be held in the office of complainant's counsel before N. Robert Day, Deputy Clerk of Cuyahoga County, Ohio. The defendant was called for cross-examination and was then and there duly sworn to be a witness to testify, and complainant's counsel proceeded to interrogate the defendant regarding the issues between complainant and defendant in this case.

Whereupon defendant's counsel objected to having defendant "being called on constitutional grounds, as a witness against himself." Defendant's counsel stated, "He (the defendant) will consent to testify. However, we want the record to show that it is over our objections."

Under cross-examination by complainant's counsel, the defendant answered the following questions:

"State your name."

"Where do you reside?"

"How long have you lived there?"

"How long have you lived in Cleveland?"

"How old are you?"

"Are you married?"

However, when asked, "And what is Mrs. Mosley's name?," the defendant refused to answer the question, "on the grounds that it might tend to incriminate me."

Subsequently, defendant did answer these questions:

"Do you have any children?"

"What is your profession?"

"What college did you attend?"

"When did you graduate?"

The defendant then refused to answer the questions:

"Is this your first marriage?"

"Then you have the one child?"

"Are you acquainted with the plaintiff in this case, Miss Mildred Taylor?"

"Do you know where Deering's Restaurant is?", on the grounds that "It might tend to embarrass or incriminate me."

The defendant also refused to answer other questions pro-

pounded to him by complainant's attorney when objected to by defendant's counsel on grounds that they were immaterial, irrelevant, impertinent.

Two issues are now before this Court for determination:

1. An application by the Deputy Clerk of Cuyahoga County, who presided over the taking of the deposition of defendant for rulings pertaining to defendant's refusal to answer certain questions addressed to him by complainant's counsel, on grounds that said questions and answers that might be elicited thereby, would tend to incriminate him—in violation of his rights protected by the Constitutions of the United States and of the State of Ohio. The deputy clerk's application for instructions (found on Page 16 of the record) reads as follows:

"The undersigned, being unable to determine fully his duty in the premises, and to decide whether or not the questions and the answers sought to be elicited thereby are competent, relevant and material to the issues between the plaintiff and the defendant and are such questions as the said witness CHARLES E. MOSLEY should be obliged to answer, respectfully requests the instructions of this Honorable Court in the premises, and in particular whether or not the foregoing unanswered questions should be answered by said witness."

2. Motion by defendant for a supplementary cross-examination of the complainant, on grounds that "the court failed to accord defendant the type of cross-examination contemplated by Sections 3111.04 and 3111.05, Revised Code; and that the court dismiss with prejudice the complaint herein upon plaintiff's failure to comply."

The *Fifth Amendment* of the United States Constitution provides as follows:

"No person . . . shall be compelled in any *criminal* case to be a witness against himself." (Emphasis supplied.)

*Article I, Section 10, Ohio Constitution:*

"No person shall be compelled in any *criminal* case to be a witness against himself; but his failure to testify may be considered by the court and jury and may be made the subject of comment by counsel." (Emphasis supplied.)

If the present action were a "criminal case," there would be no question whatever that it would be reversible error to permit the defendant to be called by counsel for complainant

and, over his objection, be compelled to testify against himself.

But is a bastardy proceeding a "criminal case?" And may an accused in a bastardy case, over his objection, be called for cross-examination and be compelled to testify at the request of complainant's attorney?

The Courts of Appeals of Ohio appear to be in conflict over this question.

Thus, in the case of *Schneider* v. *State, ex rel Shorf*, 33 Ohio App., 125, Court of Appeals of Cuyahoga County, decided October 7, 1929, the court ruled that in a bastardy proceeding, it was reversible error to permit the defendant to be called by counsel for the complainant and over his objection be compelled to testify against himself. The court's reasoning in this case seems to be based principally on the contention that a bastardy action is "in many respects more criminal than civil, in that the start of the proceedings is by filing an affidavit or complaint with a magistrate and having a warrant issued . . . the initiation of these proceedings is in a measure criminal . . . unless accused gives bail he is sent to jail . . . the verdict of the jury is either guilty or not guilty . . ."

7 Ohio Jurisprudence, 2d, Section 64, Page 488 explains:

"While a Court of Appeals has held that a bastardy proceeding is a quasi-criminal action, which is sufficiently criminal in nature to make it reversible error to compel a defendant to testify against himself over his objection (*Schneider* v. *State* [*Shorf*] 33 Ohio App., 125) *later cases have refused to follow this view.*" *State, ex rel. Simons*, v. *Kiser*, 46 Ohio Opinions, 11; (73 Abs 364); *State, ex rel. Hetzler*, v. *Snyder*, 63 Ohio Law Abs., 42."

In the case of *Perkins* v. *Mobley*, 4 Ohio St., 669, Judge Ranney, referring to a bastardy proceeding, said:

"In many of the states, begetting a bastard child is made an offense, and punished by indictment; but in this state (Ohio) it is not so."

In *State, ex rel. Johnson*, v. *Mooney*, 86 Ohio Law Abs., 105, Ohio App., Eighth District, Cuyahoga County, decided February 7, 1961, the court determined that a bastardy action is a civil proceeding, that the rules of civil procedure govern and that the defendant may be called for cross-examination under

the provision of Section 2317.07, Revised Code (Ohio Bar, July 3, 1961).

Syllabus 2 of the *Mooney* decision states:

"A bastardy proceeding, being a civil action, is governed by the rules of civil procedure and the putative father may be called by the plaintiff for cross-examination under the provision of Section 2317.07, Revised Code."

7 Ohio Jurisprudence, 2d, Page 488, No. 64, after citing the *Schneider case, supra*, and asserting that "later cases have refused to follow this view," adds:

"A later Court of Appeals case has taken the position that since a bastardy proceeding is essentially civil in nature, neither Section 2945.43, Revised Code, nor Article 1, Section 10 of the Ohio Constitution, which relate to the privilege against self-incrimination in a criminal case, is violated, on the theory that such a proceeding is a criminal action by calling the defendant on cross-examination in a bastardy proceeding. Of course, a witness in a *civil case cannot* be required to give testimony which will *tend to incriminate him* and this immunity is referable to the constitutional guaranty against self-incrimination in criminal cases. But the privilege against self-incrimination is a personal privilege which must be claimed by the witness himself and by no other person, and unless it is personally claimed, it is considered waived. In this respect, the privilege may be deemed waived in a bastardy proceeding where the defendant called as on cross-examination fails to object, and any error in allowing the examination if there is such objection may be deemed waived where the defendant subsequently testifies in his own defense substantially to the same effect as when called by the attorney for the complainant." (Emphasis added.)

Several other cases also hold that a bastardy proceeding is a civil action and does not have the attributes or restrictions which are generally applicable to criminal cases; and that a defendant may be called for deposition by the way of cross-examination at the trial of a case. *State, ex rel. Gill*, v. *Volz*, 156 Ohio St., 60; *Taylor* v. *Scott*, 168 Ohio St., 391; *Reams* v. *State, ex rel. Favors*, 53 Ohio App., 19; *Durst* v. *Griffith*, 43 Ohio App., 44.

The privilege against self-incrimination is one of the great

landmarks in man's struggle for liberty. It is, therefore, essential that the constitutional provision, "no person . . . shall be compelled in any criminal case to be a witness against himself" be given a liberal construction in favor of the rights it was intended to secure. *U. S.* v. *DiCarlo*, U. S. District Court, N. D. Ohio Ed. No. 20299, decided February 7, 1952.

It is evident that even in a proceeding civil in form, in which testimony is legally required, it is possible that questions asked of a witness and the answers elicited thereby might have the effect to expose the witness to later punishment in the courts.

Thus, in a bastardy hearing answers to questions dealing with defendant's alleged sexual relations with the complainant could conceivably expose him to later prosecution and punishment for the offenses of adultery or fornication.

Therefore, it is this court's opinion that the only safe rule, consistent with the constitutional privilege against self-incrimination, is that a witness in any proceeding whatever, in which testimony is legally required, may refuse to answer any question when the answers to be elicited thereby might be used as evidence against him in any future prosecution in a criminal case, or which might uncover evidence against him.

The Court of Appeals, Darke County, decided November 24, 1950, in *State, ex rel. Simons,* v. *Kiser,* 46 Ohio Opinions, 11, (73 Abs., 364), *ruled that* a defendant could be called for cross-examination, *but that he had the right to assert the constitutional privilege if questions and answers sought to be elicited tended to incriminate him. Syllabus 2 of this case states*:

"A witness in a civil action is not required to give testimony which will tend to incriminate him."

Discussing this subject, 42 Ohio Jurisprudence, 33, states:

"The privilege of a witness not to *give self-incriminating evidence is not limited merely to criminal prosecutions* wherein the *witness is the defendant, but can be invoked in any judicial proceedings.* This is generally held even under constitutional provisions granting the privilege only to persons in a criminal case, as to hold otherwise would be to emasculate the essential principle of the rule, since the commission of nearly every crime carries with it a civil liability, in the legal enforcement of which a person suspected of crime might be compelled to disclose the facts essential to his conviction in a subsequent criminal prose-

cution. The Ohio Constitution in stating the rule, refers only to *criminal* cases, but the right of a witness in a *civil action* to assert the privilege seems never to have been questioned, and has been upheld in a number of cases.''

The Supreme Court of the United State in *Slagle* v. *State*, 366 U. S., 259; 16 Ohio Opinions, 2nd, 440, decided May 15, 1961, stated:

''A person summoned to testify before any adjudicatory or investigatory body, including a legislative investigatory committee, may object to any question put to him upon any available ground, however tenuous.''

*As to the specific issues in this case, the court's ruling is as follows:*

1. Although a bastardy action has some of the characteristics of a criminal proceeding, it is essentially a civil action. Therefore, an accused in a bastardy case may be called by counsel for complainant, and, over defendant's objection, be compelled to testify under cross-examination, either orally or by deposition.

2. An accused in a bastardy proceeding cannot be forced to testify nor to give evidence in such proceeding, when to do so would tend to incriminate him.

3. Since the privilege against self-incrimination is a personal privilege which the witness alone must claim, it is for the witness himself to determine when he should invoke the constitutional protection against self-incrimination. However, a witness may not arbitrarily or capriciously refuse to answer a question on his mere claim that his answer would tend to incriminate, embarrass or disgrace him. The privilege must be limited to instances where there is reasonable cause for the witness to apprehend danger that his testimony would possibly expose him to punishment in the courts.

4. And it is for the trial judge to determine whether a witness's refusal to testify in any given instance is based on reasonable cause, and that the witness is using his constitutional privilege properly.

In a well-reasoned opinion, Judge Charles McNamee in *U. S.* v. *DiCarlo*, U. S. District Court, N. D., Ohio, E. D., No. 20299, decided February 7, 1952, and reported in 48 Ohio Opinions, 415, ruled:

The applicable rule in this case, briefly stated, is that in Ohio, as to self-incrimination, appears to rest on the determination of the witness himself, with the Court determining whether the witness' own determination is reasonable.

"In such a case the witness must himself judge what his answer will be; and if he says on oath that he cannot answer without accusing himself, he cannot be compelled to answer.

"This protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer.

"To sustain the privliege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The *trial judge* in appraising the claim must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence."

Judge McNamee reached back to the historic trial of *Aaron Burr*, 25 Fed. Cas. pp. 38, 40, No. 14,692, and quotes Chief Justice Marshall, who declared:

"It is the province of the court to judge whether any direct answer to the question which may be proposed will furnish evidence against the witness. If such answer may disclose a fact which forms a necessary and essential link in the chain of testimony, which would be sufficient to convict him of any crime, he is not bound to answer it so as to furnish matter for that conviction. In such a case the witness must himself judge what his answer will be; and if he says on oath that he cannot answer without accusing himself, he cannot be compelled to answer."

"As recently as April 25, 1951, in *Hoffman* v. *United States*, 341 U. S., 479, 71 S. Ct., 814, 818, 95 L. Ed., 1118, the Supreme Court restated the proposition that 'The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.' The court immediately added the qualifying declaration first announced in *Mason* v. *United States*, 244 U. S., 362, 365, 37 S.

Ct., 621, 61 L. Ed., 1198, that 'this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer.' As a final word upon the applicable principle, the Supreme Court in the *Hoffman case*, said: 'To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' '' See Taft, J., in *Ex parte Irvine*, C. C. S. D. Ohio 1896, 74 F. 954, 960.

"Whenever a witness refuses to answer pertinent questions, the validity of his justification is to· be determined by the application of the foregoing principles."

With these principles as a guide, we examine the questions propounded to the defendant in this case, and which he refused to answer on the grounds that his answers thereto would tend to incriminate him. Following are this court's rulings whether such questions and answers that might be elicited therefrom would tend to incriminate him or furnish evidence against him which might be used against him in any future prosecution.

Q. And what is Mrs. Mosley's name?

A. I refuse to answer the question on the grounds that it might tend to incriminate me.

Ruling: The court does not believe that answering this question would tend to incriminate defendant. Therefore, the defendant is ordered to answer this question.

Q. Is this your first marriage?

A. I refuse to answer the question on the grounds that it might tend to incriminate me.

Ruling: The court does not believe that answering this question will tend to incriminate defendant and orders him to answer this question.

Q. Then you just have the one child, is that right?

A. I refuse to answer the question on the grounds that it might tend to embarrass or incriminate me.

Ruling: In view of the fact that in a preceding question, namely, "Q. Do you have any children, Mr. Mosley? A. I have

a son 18"—the defendant has already answered substantially the same question, the court rules that this question will not incriminate defendant and he is ordered to answer it.

Q. When were you admitted to practice law in the State of Ohio?

A. (By Mr. Gamble) I object to that question as being immaterial.

Ruling: The court holds this question to be immaterial and instructs the clerk that defendant need not answer this question.

Q. Where do you maintain your offices, Mr. Mosley?

A. (Mr. Gamble) I object for the same reason.

Ruling: The court holds this question is immaterial and instructs the clerk that defendant need not answer this question.

Q. Mr. Mosley, are you acquainted with the plaintiff in this case, Miss Mildred Taylor?

A. I refuse to answer the question on the grounds that it might tend to embarrass or incriminate me.

Ruling: The court holds that answering this question may provide a link in incriminating defendant and the clerk is instructed that defendant need not answer this question.

Q. Do you know where Deering's Restaurant is?

A. I refuse to answer the question on the grounds that it might tend to embarrass or incriminate me.

Ruling: The court holds that inasmuch as defendant's counsel in the preliminary cross-examination of plaintiff alluded to "Deering's Restaurant," answering this question will not tend to embarrass or incriminate defendant, and orders defendant to answer this question.

Mr. Dworkin: Would that (refusal to answer) also apply to any questions pertaining to the defendant's financial circumstances and his financial ability in accordance with the subpoena duces tecum in which he was asked to bring with him records concerning his business and financial means and ability?

Mr. Willis: Yes, we take exception to his making any disclosure along that line.

Ruling: The court holds that questions pertaining to defendant's financial circumstances, etc. are not pertinent at this point in the proceedings and rules that defendant need not answer such questions. Not until the paternity of the illegitimate child is determined will the trial court concern itself

with the matters of payment of prenatal, maternity expenses, maintenance of child, etc.

MOTION OF DEFENDANT FOR AN ORDER REQUIRING THE COMPLAINANT TO SUBMIT TO A SUPPLEMENTARY PRELIMINARY EXAMINATION AND TO DISMISS WITH PREJUDICE THE COMPLAINT HEREIN UPON HER FAILURE TO COMPLY WTH THE ORDERS OF THIS COURT.

A review of the preliminary examination proceedings conducted May 9, 1961 discloses that the defendant's cross-examination of the complainant constitutes approximately 16 pages of typewritten testimony. The court advised defendant's counsel that a number of other cases were on that morning's docket, and that if his cross-examination of complainant would take much more time, the cross-examination would have to be continued to a future time. Defendant's counsel complained that he was "seriously limited" in his questioning. A review of the cross-examination proceedings discloses that the so-called limiting of the questioning pertained to defendant's counsel questioning the complainant concerning relations with other men during periods remotely before or after the time of conception of the child—the court ruling that the chastity of the complainant was not an issue in this case and that questioning regarding complainant's alleged relations with other men should be limited to dates no more than approximately two months before or two months subsequent to the time of conception.

"In a proceeding of this nature, the sole issue is the paternity of the illegitimate child, and the chastity of the mother is immaterial. Lewd conduct of the complainant is no defense, unless it tends to show that another than the defendant is, or may be, the father of the child. Hence, evidence that the mother had intercourse with another man at a period of time which, in the course of nature, could not result in the conception complained of, is not relevant to the inquiry, and is, therefore, inadmissible." *Thomas* v. *United States*, 121 Fed. 2d, 905.

"The character of the mother is not in issue." *Quasion* v. *Friedman*, 110 Ohio App., 166, 12 Ohio Opinions (2d), 430, decided May 29, 1959, Syllabus 3 of which states as follows:

"In such case, evidence is admissible to show that the plaintiff had sexual intercourse with men other then defendant

at about the time the child was conceived, but it is not prejudicial error to exclude evidence which merely shows that the plaintiff had intercourse with other men, where no further evidence is proffered to the effect that she actually had, or was disposed to have, such intercourse *at the time when the child was conceived.*"

Section 3111.04, Revised Code, which defendant cites as authority against limitation of his right of cross-examination of complainant, states:

"The accused shall be permitted to ask her, under oath, any question he thinks necessary for his defense."

Logic and reason hold that the phrase "any question he thinks necessary for his defense" must be construed as permitting the defendant to ask only such questions as are relevant, material and competent under the rules of evidence. The privilege of cross-examination under the statute is not unlimited but is subject to reasonable control within the sound discretion of the court.

7 Ohio Jurisprudence 2d, Bastardy, Section 13

". . . This has been interpreted to mean that the accused may ask any question which, within the rules of evidence, is competent, relevant, or material to the complaint, or which under such rules may have a tendency to establish a defense."
. . .

The case of *Mabra v. State, ex rel. Settles*, 21 Ohio Law Abs., 190, dealing with this issue, states:
. . . "It is urged by counsel for Mabra that proper interpretation of the language quoted, 'any question he may think necessary for his defense,' required the court to permit the accused all the latitude in interrogation of the complainant which in the judgment of the accused and his counsel is necessary for his defense."

"Under the language 'any question he may think necessary for his defense' as used in Section 12111, General Code, the accused in a bastardy proceeding is permitted to ask the complainant any question which, within the rules of evidence is competent, relevant or material to the complaint of the prosecuting witness, or which under such rules may have any tendency to establish a defense."

Accordingly, this court holds that the objection of the de-

fendant that his right of cross-examination was "seriously limited" is not well taken; and his motion for supplementary cross-examination of complainant is denied.

This case raises the further question as to the responsibility of the juvenile court "to reduce to writing the examination of the complainant . . . the questions of the defendant and the answers thereto by the complainant," etc.

The defendant in his Motion and Brief, filed September 1, 1961, complained that to the time of the preparation of his said Motion and Brief "he had not received a copy of the examination that was conducted . . ." (A copy of the 16-page examination was prepared by a deputy clerk of the juvenile court and mailed to defendant's counsel September 1, 1961.)

Section 3111.05, Revised Code, now provides:

"The examination of complainant by the county court, juvenile judge, or referee, the questions of the defendant, and the answers thereto by the complainant must be reduced to writing, in the presence of the judge or referee and subscribed by the complainant."

This statute does not specify who must reduce the cross-examination of complainant to writing. It is significant that before the Legislature of Ohio eliminated the office of justice of the peace in the State of Ohio, Section 3111.05, Revised Code, provided:

"The examination of complainant by the *justice of the peace*, juvenile judge, or referee, the questions of the defendant and the answers thereto by the complainant must be reduced to writing in the presence of the judge, *justice*, or referee and subscribed to by the complainant." (Emphasis supplied.)

It is difficult to believe that the Legislature of Ohio in enacting the above provision intended that a justice of the peace should reduce to writing "the examination of the complainant" and "the questions of the defendant and the answers thereto by the complainant," etc., at a time when many of the justices of the peace officiating in Ohio were not lawyers but oftentimes farmers, tradesmen, mechanics, etc. It is apparent from the history of this enactment that the intent of the legislature was that the responsibility of reducing to writing of the "examination of complainant" and "the questions of the de-

fendant and the answers thereto by the complainant" lies with the parties to the action.

The Juvenile Court of Cuyahoga County, where nearly 1,300 paternity cases were filed in 1960, and of which number approximately 200 to 250 proceeded to the point of cross-examination of the complainant at a preliminary hearing, as provided by Section 3111.04, Revised Code, has no provisions for the employment and compensation of court reporters to report and transcribe such testimony on cross-examination.

It cannot be inferred that this function of reducing such cross-examination to writing is the obligation of the juvenile court, for if it were so, the state legislature would have made some provision for employing and compensating court reporters to perform this function.