CRAWFORD, PLAINTIFF, *v.* HASBERRY, DEFENDANT.

Juvenile Court, Cuyahoga County.

No. 183361. Decided March 30, 1962.

*Mr. Ermer L. Watson*, for plaintiff.
*Mr. Edwin F. Woodle*, for defendant.

WHITLATCH, J.    This is an action in bastardy which now comes before the court on the defendant's motion for a new trial. The plaintiff, Frances Crawford, filed her action on January

23, 1959, alleging that she was unmarried and pregnant with a bastard child and that the defendant, Columbus Hasberry, was the father of the child. The preliminary examination was had on April 15, 1959, at which time the defendant entered a plea of "Not Guilty." The plaintiff's child was born on June 5, 1959.

On January 8, 1962, the matter came on for hearing before the court, the parties having duly waived trial by jury. Upon the conclusion of the case, the court found the defendant guilty and adjudged him the reputed father of the plaintiff's child. Counsel for the defendant filed his motion for a new trial contending there was error in the trial and in the finding and judgment of the court in the following respects, to wit:

1. The finding and judgment of the court are not supported by the evidence and are against the weight of the evidence.

2. The finding and judgment of the court are erroneous as a matter of law, and are contrary to law.

3. The court erred in sustaining objections of the plaintiff to evidence sought to be introduced on behalf of the defendant.

4. The court erred in limiting the argument of counsel for the defendant and refusing to consider testimony and evidence in the record relevant to the issues.

5. The court erred in examining and cross-examining the defendant's witnesses with respect to statements read by the court from a text which was not identified by the court either as to title, author or page.

In respect to his first two claimed grounds of error counsel's principal argument is that the plaintiff at the preliminary examination and at the trial fixed the date of conception at a time when, in accordance with medical testimony adduced at the trial, she could not have conceived the "full term" baby which was born to her.

Counsel contends that he has an absolute right to rely on the plaintiff's statement at the preliminary examination as to when she became pregnant. He likens the preliminary examination to a bill of particulars in a criminal case and points out that in a criminal case the prosecution is not permitted to introduce evidence which varies from the bill of particulars. If we should elect to consider the matter as a civil action he likens the preliminary examination to the petition and points out that in

a civil action the plaintiff would not be permitted to recover on evidence which varies from the claim made in the petition.

Is there validity to counsel's assertion that the preliminary examination should be strictly treated as a bill of particulars in a criminal case? We think not. The question as to whether the trial of a bastardy action is governed by the rules of civil procedure or the rules of criminal procedure now appears to be definitely settled in favor of the rules of civil procedure. The reason for the confusion on this point and the conclusion reached by the courts is well stated by Judge Hart in *State, ex rel. Gill,* v. *Volz,* 156 Ohio St., 60, 45 Ohio Opinions, 66, as follows:

"Much of the confusion as to the character of the procedure in bastardy cases comes about by the fact that there is no independent provision made for procedure in bastardy proceedings and as a consequence the procedure must necessarily follow either the provisions of the Code of Civil Procedure or the provisions of the Code of Criminal Procedure, with the (72) result that the courts have generally accepted and followed the provisions of the Civil Code in the absence of specific requirements in the Bastardy Act itself."

Again in this same opinion *(State, ex rel. Gill,* v. *Volz, supra)*, Judge Hart says the following:

"This court, in view of the historical background of the legislation relating to this matter and in view of what appears to be the long settled practice of the inferior courts of this state, is constrained to hold that a bastardy proceeding is essentially a civil action and that the trial court committed no error in the instant case in accepting the verdict of guilty concurred in by nine members of the jury."

Without exception, the courts in recent years have decided that the rules of civil procedure are to be employed in the trial of bastardy actions. See the many citations to this effect in *State, ex rel. Gill,* v. *Volz, supra,* also see *Taylor* v. *Scott,* 168 Ohio St., 391, 7 Ohio Opinions (2d), 243; *State, ex rel. Simons* v. *Kiser,* 59 Ohio Law Abs., 113, 46 Ohio Opinions, 11, and the recent cases, *State, ex rel. Johnson* v. *Mooney,* 86 Ohio Law Abs., 105 (Ohio Appeals, Eighth District, Cuyahoga County) and *Taylor* v. *Mosely,* 17 Ohio Opinions (2d), 439 (Cuyahoga County, Juvenile Court, Woldman, J.), 87 Abs., 335. It is well

that this issue is finally settled for surely this fish or fowl enigma should not be permitted to plague us forever.

Palpably then the rules of criminal procedure do not apply to bastardy actions and the analogy of the preliminary examination to a bill of particulars is not well taken.

May the preliminary examination be likened to the petition in a civil action so as not to permit the plaintiff to recover on evidence which constitutes a variance from the claim made in the petiton? Again, we must answer in the negative. It appears to be completely consistent with the rules of civil procedure to consider the "complaint" which is authorized by Section 3111.01, Revised Code, as the petition. Here pursuant to the statute the plaintiff sets forth her cause of action. She alleges that she is an unmarried woman (and in the instant case) that she is pregnant with a bastard child and that the defendant is the father of the child. These then are the issues squarely raised that she must sustain at the trial. The preliminary examination specifically provided by statute (Section 3111.04, Revised Code), is much more logically likened to a deposition rather than to a petition. Therefore, this analogy likewise limps badly.

When we reject both of counsel's analogies we must still resolve the questions as to whether or not the plaintiff to sustain the allegations of her complaint must prove the exact date of conception, and whether or not the defendant was prejudiced materially by the plaintiff's representation as to when she became pregnant.

At the preliminary examination when asked by the clerk, "When was it begotten?" the plaintiff replied, "between October 8 and November 8, 1958." In examining the plaintiff as to this statement counsel for the defendant asked her, "Is that the closest date that you can fix?" "Was it the 8th of October or the 8th of November ?" The plaintiff replied, "Well from what I understand, my last menstruation period was October 8, so between that time and November 8, there was relationships, and I didn't come around on November 8." If the only testimony offered had to do with sexual relationship between the parties subsequent to October 8, or if we accepted the defendant's testimony that he had sexual relations with the plaintiff only once, this being on November 8, 1958, then the plaintiff's statement

as to when the child was conceived would indeed be material. But such is not the case. The plaintiff at the preliminary examination under questioning by counsel for the defendant stated that she had sexual relations with the defendant in September 1958. In answer to the question of counsel for the defendant, "When was the first time?" the plaintiff answered, "It was in September, I believe September 15." From this testimony counsel was on notice of the plaintiff's claim of sexual relations with the defendant in September. Further from his examination of the plaintiff counsel was on notice that she claimed to have had sexual relations with no one other than the defendant at that time. Considering all the testimony, of which a more detailed analysis will be given below, the court does not accept the defendant's claim that he had sexual relations with the plaintiff *only* on November 8, 1958.

Is the plaintiff required to prove the date of conception to sustain the issues of her complaint? We find no Ohio decisions on this point. It is significant, however, that the standard jury charge employed by trial courts throughout the state provides the following instructions:

"Period of Gestation: The usual period of gestation which elapses between the conception and birth of a child is approximately two hundred and eighty days. This period may vary somewhat, depending upon the condition of the mother. *It is not necessary to prove the exact date on which the complainant became pregnant* but the act of intercourse must be shown to have occurred on such a date as will satisfy you that the child was the result of such intercourse." (Emphasis added.)

Ohio Instructions to Juries, Judge Lehr Fess, Page 169.

A similar instruction is given in Lamneck's Ohio Juvenile Court Manual, 1948 Edition, Page 388.

From all the testimony the court concludes that the child which was born to the plaintiff on June 5, 1959, was conceived in September 1958. On this issue the court had before it not only the testimony of the plaintiff, but the testimony of the medical experts of both parties. Thus the period of gestation in this case is completely within the rule of which the court takes judicial notice and is entirely consistent with the medical testimony of the medical experts in this case. As stated in

Schatkin's Disputed Paternity Proceedings, Second Edition, Page 350.

"In the United States, the courts will judicially notice that a period of 9 calendar months is the usual period of gestation."

As to the plaintiff's testimony that she menstruated in October, Dr. Albert H. Dyson who delivered the child testified that it is not uncommon for a pregnant woman to continue to bleed for two or three months after conception and that this bleeding is not true menstruation, but what is known as "uterine bleeding." It is reasonable from all the evidence to conclude that what the plaintiff concluded was her last menstrual period before delivery was in reality "uterine bleeding."

That the plaintiff need not prove the exact time she became pregnant appears to be well established.

"The exact date on which child was begotten is not material except as it bears on the principal question which is whether or not the accused is the father of the bastard." 10 C. J. Section 181, Section 96.

*State* v. *Fuchs*, 186 N. W., 752 (Supreme Court of North Dakota) is a decision completely on "all fours" with the facts in the case at bar. The plaintiff in the *Fuchs case* alleged not only in the preliminary examination that she became pregnant one month later than substantiated by the facts known after the birth of the child, but she also set forth in her original complaint this same averment as to when the child was begotten. Here as in the case at bar, the plaintiff's testimony was that she had also had sexual relations with the defendant a month earlier than the month in which she said the child was begotten. The earlier month was consistent with the normal period of gestation and the birth of the child. In the *Fuchs case*, as in the case at bar, the defendant contended that the plaintiff was bound by the date of conception which she had given and that thus the verdict was contrary to the weight of the evidence. It was further contended in the *Fuchs case* that the court erred in giving the following instructions to the jury:

"I charge you, gentlemen, that the particular date charged in the complaint need not be proved if in fact you find by a preponderance of the evidence that a bastard child was begotten upon the body of and delivered by the unmarried woman, Anna

212

Moser, and that the same was begotten by the defendant, then it is immaterial as to the particular date charged in the complaint. The question is, Was such a child born, and if it was, was the defendant the father of the same?''

In upholding the judgment of the lower court the Supreme Court of North Dakota held as follows:

''These two assignments of error are both predicated upon the proposition that the complaint alleged that the child was 'begotten by the defendant, on or about the 22nd day of June, 1920.' And it is asserted that the date so alleged was material; that it was improper to admit evidence relating to an act of intercourse said to have occurred on May 11th; and that it was error to permit the jury to find a verdict against the defendant on such evidence.

''In our opinion the assignments are not well taken. In other words, we are of the opinion that the evidence relating to the act of intercourse said to have occurred on May 11, 1920, was admissible, and also that, under the evidence in this case, the instruction given was not erroneous.''

In 179 Pa. Super., 398, 116A (2d), 844, is further authority for the ruling that the plaintiff is not bound by the date she gave as to time of conception:

''It is also contended that the Commonwealth was precluded from proving a fruitful coition at a time other than that charged in the indictment. This was answered in *Comm.* v. *Blank*, 79 Pa. Super., 49, in which we held that it was sufficient to prove illicit intercourse about the time the child must have been begotten in order to convict of bastardy.''

We conclude therefore, that no error of law or abuse of discretion was committed by the court in not being bound by the plaintiff's statement as to when the child was conceived. Accordingly, the motion for a new trial as to grounds one and two is overruled.

In third and fourth stated grounds for a new trial counsel contends that the court erred in sustaining the objection of opposing counsel to the introduction of evidence relative to another illegitimate child of the plaintiff and in sustaining an objection to his argument in reference to the alleged second illegitimate child. It is well established that neither the plaintiff's character nor her chastity is put in issue in a bastardy

proceeding. 7 Ohio Jurisdiction (2d), 495. Here there was no evidence nor indeed, any suggestion, that the plaintiff had sexual relations or associated with any male other than the defendant at the time when she became pregnant with this child. As is said in *Thomas* v. *United States*, 121 Fed. (2d), 905:

"In a proceeding of this nature, the sole issue is the paternity of the illegitimate child, and the chastity of the mother is immaterial. Lewd conduct of the complainant is no defense, unless it tends to show that another than the defendant is, or may be, the father of the child. Hence, evidence that the mother had intercourse with another man at a period of time which, in the course of nature, could not result in the conception complained of, is not relevant to the inquiry, and is, therefore, inadmissible."

In syllabus 3 of *Quasion* v. *Friedman*, 110 Ohio App., 166, 12 Ohio Opinions (2d), 430, decided in 1959 we find the following:

"In such case, evidence is admissible to show that the plaintiff had sexual intercourse with men other than defendant at about the time the child was conceived, but it is not prejudicial error to exclude evidence which merely shows that the plaintiff had intercourse with other men, where no further evidence is proffered to the effect that she actually had, or was disposed to have, such intercourse *at the time when the child was conceived.*"

We conclude, therefore, that we were not in error in sustaining the objections to evidence and argument in respect to another alleged illegitimate child of the plaintiff. The motion for a new trial as to grounds three and four is also overruled.

For his fifth ground for a new trial counsel for the defendant contends that the court committed error in referring to a book while examining the medical experts without disclosing the text from which he was propounding the questions. The court was glancing through Schatkin's Disputed Paternity Proceedings during the examination of one of the experts, but did not propound any questions therefrom. The record will show that the court would have no need for any text in formulating the questions which the court put to the physicians who testified. The court's questions were suggested solely and completely by

the testimony of the particular witness. The motion for a new trial as to the fifth ground is likewise overruled.

There follows a brief summation and an analysis of other significant evidence which the court considered quite weighty in arriving at its decision.

The court sitting as the trier of the facts in a bastardy case must particularly take into account the relationship that existed between the parties. Here it was evident that the plaintiff and the defendant formed their relationship by reason of living across the hall from each other in the same apartment house. The plaintiff's testimony as to her association with the defendant during the summer and fall of 1958 was fully corroborated by neighbors of both parties and to an extent by the defendant's best friend and by the defendant himself. The defendant denies any romantic association between him and the plaintiff. He says that he had a "steady girl friend" during this period who lived a short distance from his apartment and he, therefore, had little interest in the plaintiff. However, he does admit going with her to the park, a drive-in theater and to a fraternity party. The defendant's testimony as to having a steady girl friend is controverted by his own witness, a young man described as his best friend. When asked by counsel for the plaintiff if the defendant had a girl friend the witness answered that the defendant did not have a girl friend but that, on the contrary, the defendant had many girl friends! The defendant's own story of his relations with the plaintiff is difficult of belief. He testified that in his association with the plaintiff he never kissed her until the night of November 8. On that particular night he would have us believe that the plaintiff practically forced him to have sexual relations with her and this after a long night of attending several gay parties where there had been considerable drinking of intoxicating beverages.

It is also significant that the plaintiff denied any sexual relations with any man other than the defendant during the time when she might have become pregnant and also denied associating with other men during this period. Her statement as to having no other boyfriends was not controverted by the defendant who lived across the hall from her and who could be reasonably expected to know something of her activities. All of these circumstances gave rise to reasonable inference in the

mind of the court that there was a definite "love affair" between the parties extending over a period of several months.

Also worthy of consideration in the evidence was what the court perceived to be a marked resemblance between the child and the defendant. The child in this instance was two years and seven months old at the time of the trial, an age when the similarities or dissimilarities are much more pronounced than when the child is a few months old.

Everything considered, the court had no difficulty in resolving by a preponderance of the evidence that the defendant was the father of the plaintiff's child.

In anticipating the court's order as to maternity expenses pursuant to Section 3111.17, Revised Code, counsel contends that if the court commits the defendant to jail pursuant to the above section for the defendant's failure to pay, or secure to be paid the maternity expenses, that this would be imprisonment for debt in a civil action, and therefore, in conflict with Section 15, Article I of the Ohio Constitution. The court respectfully directs counsel's attention to *Hawes, Commr.*, v. *Cooksey*, 13 Ohio St., 242, *Musser* v. *Stewart*, 21 Ohio St., 353, and *Bedling* v. *State, ex rel.*, 121 Ohio St., 393. In the *Musser case, supra*, it was held that an action in bastardy was not a suit to recover a sum of money owed by the defendant to the complainant; that it was not founded on contract expressed or implied, but that it originates in the wrongful act of the defendant, against the consequences of which the statute is designed to protect the public and hence the statute (analogous to Section 3111.17, Revised Code), was not in conflict with Section 15, Article I of the Ohio Constitution. The 3rd syllabus of the *Bedling case, supra*, holds as follows:

"A judgment that a defendant in a bastardy suit pay to the claimant a sum of money for 'support, maintenance and necessary expenses caused by pregnancy and child birth,' and that in default of payment or security for such payment that he stand committed to jail, there to remain except as provided in Section 12124, General Code, until he complies with the order of the court, does not violate either Section 15, Article I of the Ohio Constitution, or the Fourteenth Amendment to the Federal Constitution."

This opinion has covered the issues raised by the defend-

216

ant's motion for a new trial presented in his brief and oral argument and the court upon full consideration thereof finds no basis in law for granting a new trial. The defendant's motion for a new trial is therefore overruled and this cause is set for hearing on April 5, 1962, to determine maternity expenses, past care due for the child and the future support of the child.