STATE OF MINNESOTA *vs.* GERHARD H. THADEN.

May 9, 1890.

Witness—Privilege to Refuse Self-Criminating Testimony.—To entitle a person called as a witness to the privilege of silence, the court must see, from all the circumstances of the case, and the nature of the evidence which the witness is called on to give, that there is reasonable ground to apprehend that the evidence may tend to criminate him if he is compelled to answer. The danger to be apprehended must be real and appreciable with reference to the ordinary operation of law, in the ordinary course of things, and not imaginary or unsubstantial, or a mere remote and naked possibility.

Conspiracy—Evidence—Acts of one Conspirator.—Where two or more persons conspire together to commit any offence or actionable wrong, everything said, done, or written by any one of them, in the execution or furtherance of their common purpose, is to be deemed as so said, done, or written by every one.

Same—Issuing Forged Notes and Dividing Profits—Evidence—Statements by one Conspirator.—Where the common purpose of the conspirators embraced, not merely the putting off as true of forged promissory notes, but also the disposition of the fruits of the fraud and the division of the proceeds among themselves, statements by one of them,

made after the forged paper was issued, but before the disposition or division of the property obtained for it, with reference to future contemplated acts for the purpose of concealing the fraud so as to enable the conspirators to consummate the common purpose by disposing of the fruits of the crime and dividing the proceeds, are admissible against the other conspirators, although the statements also referred to a past act committed in execution of the conspiracy.

Appeal by defendant from an order of the district court for Ramsey county, *Brill,* J., presiding, refusing a new trial.

*Johns, Michael & Johns,* for appellant.

*M. E. Clapp,* Attorney General, and *M. D. Munn,* for the State.

MITCHELL, J.    The defendant was jointly indicted with two others (Partello and Tall) for forgery in the second degree, by putting off as true upon one Christianson a false and forged promissory note purporting to have been executed by one Linstad.    He demanded and was granted a separate trial, and the state called, as a witness in its behalf, Linstad, the person whose name was alleged to have been forged.    The first error assigned is the ruling of the trial court in compelling this witness to answer certain questions, he having previously declined to do so, claiming that the same might tend to criminate himself.    While no principle of the common law is more firmly established than that which affords a witness the privilege of refusing to answer any question which will criminate himself, yet its application is attended with practical difficulties.    To hold that the witness himself is the sole and absolute judge whether the answer will criminate him would be to place it in his power to withhold evidence whenever he saw fit.    Such a rule could not be tolerated for a moment.    On the other hand, to require him to state what answer he would have to give, or to explain fully how his answer would tend to criminate, would deprive him of the very protection which the law designs to afford.    Moreover, the reason of the rule forbids that it should be limited to confessions of guilt, or statements which may be proved in subsequent prosecutions as admissions of facts sought to be established therein; but it should be extended to the disclosure of any fact which might constitute an essential link in a chain of evidence by which guilt might be established, although the fact alone would not

indicate any crime. Hence the problem is how to administer the rule so as to afford full protection to the witness, and at the same time prevent simulated excuses. All the authorities agree to the general proposition that the statement of the witness that the answer will tend to criminate himself is not necessarily conclusive, but that this is a question which the court will determine from all the circumstances of the particular case, and the nature of the evidence which the witness is called upon to give. But the question on which the cases seem to differ is as to what we may call the burden of proof; some holding that the statement of the witness must be accepted as true, unless it affirmatively appears from the circumstances of the particular case that he is mistaken, or acts in bad faith, while other cases hold that, to entitle a witness to the privilege of silence, the court must be able to see, from the circumstances of the case and the nature of the evidence called for, that there is reasonable ground to apprehend danger to the witness, if he is compelled to answer. The following are a few of the leading cases treating of this subject: 1 Burr's Trial, 255; *People* v. *Mather*, 4 Wend. 229, 254; *Ward* v. *State*, 2 Mo. 120; *Kirschner* v. *State*, 9 Wis. 140; *Chamberlain* v. *Willson*, 12 Vt. 491; *Janvrin* v. *Scammon*, 29 N. H. 280; *Fries* v. *Brugler*, 7 Halst. 79, (21 Am. Dec. 52;) *Temple* v. *Com.*, 75 Va. 892; *La Fontaine* v. *Southern Underwriters*, 83 N. C. 132; *Reg.* v. *Boyes*, 1 Best & S. 311. The difference is theoretical, rather than practical; for it would be difficult to conceive of an instance where the circumstances of the case, and the nature of the evidence called for, would be entirely neutral in their probative force upon the question whether or not there was reasonable ground to apprehend that the answer might tend to criminate the witness. After consideration of the question and an examination of the authorities, our conclusion is that the best practical rule is that laid down in some of the English cases, and adopted and followed by Chief Justice Cockburn, in *Reg.* v. *Boyes, supra*, "that, to entitle a party called as a witness to the privilege of silence, the court must see, from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to an-

swer." To this we would add that, when such reasonable apprehension of danger appears, then, inasmuch as the witness alone knows the nature of the answer he would give, he alone must decide whether it would criminate him. This, we think, is substantially what Chief Justice Marshall meant by his statement of the rule in the Burr trial. As was said in *Reg.* v. *Boyes, supra*, the danger to be apprehended must be real and appreciable, with reference to the ordinary operation of law, in the ordinary course of things; not a danger of an imaginary or unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct. A merely remote and naked possibility, out of the ordinary course of the law, and such as no reasonable man would be affected by, should not be suffered to obstruct the administration of justice.

Applying this rule to the case at bar, it is very clear that no error was committed in compelling the witness Linstad to answer the questions. The sole object of the evidence sought to be elicited from him was to prove that his signature to the note was forged, and not genuine. For the purpose of proving this, counsel for the state exhibited the note to him, and asked if the name affixed was his signature. This the witness declined to answer, on the ground that it might criminate himself, and the court held that he need not answer the question. Counsel then, with the evident purpose of proving the same fact indirectly, asked the following questions: "Have you ever seen this note before?" The witness replied, "I refuse to answer that question, because it may criminate myself;" or, as subsequently expressed, "it might have a tendency to criminate myself." The court having ruled that he must answer, the witness replied, "Yes." Counsel then asked him, "When?" to which the witness interposed a claim of privilege in the same form as before, and, the court having again ruled that he must answer, he replied, fixing the time he had first seen the note at a date subsequent to the date of the alleged uttering by the defendant.

Whether the rulings of the court were consistent in sustaining the witness' claim of privilege as to the first question, and overruling it as to the other two, is immaterial. There was not a thing, either in.

the circumstances of the case as then presented to the court, or in the nature of the questions, to suggest any reasonable apprehension of danger to the witness from being compelled to answer. The very nature of the offence charged against defendant negatived the idea of the witness' being a party to it, and there was nothing in the character of the evidence sought to be elicited from him that would reasonably suggest any real or appreciable danger that it would or could tend to inculpate him in any other offence. The answers themselves, when given, show that they had no such effect. It is also worthy of notice that witness did not state that his answers would criminate him, or even that he believed they would, but merely that they *may* or they *might* have that tendency. We might probably have rested the decision on this point alone.

The second and third assignments of error raise the same question, and may be considered together. It is claimed that the court erred in allowing one Esklund, a witness for the state, "to testify to a conversation had by him with Partello or Tall and Partello, in the absence of defendant, concerning the so-called Christianson deal, at a time after the same had been consummated." The question involved in these assignments is what acts or declarations of conspirators are relevant and admissible against each other. The admitted rule is that, if two or more persons conspire together to commit any offence or actionable wrong, everything said, done, or written by any one of them, *in the execution or furtherance of their common purpose*, is to be deemed as so said, done, or written by every one, and is deemed to be a relevant fact as against each of them; but statements in the nature of a narrative of past events, after the conspiracy is ended and its purpose fully consummated or executed, as to measures taken in the execution or furtherance of any such common purpose, are not relevant, as such, as against any conspirators, except those by whom or in whose presence such statements are made. The testimony in the present case showed, or tended to show, that, at and prior to the time the forged note in question was put off on Christianson, the defendants Partello and Tall had entered into a conspiracy to commit a series of frauds, by putting off as genuine false and forged notes and mortgages; that they had sometimes used the name of Linstad

as the pretended maker of the instruments used to perpetrate these frauds; that this conspiracy contemplated and embraced, not merely the putting off as true of these forged instruments, but also the division among themselves of the proceeds of these frauds, and, impliedly at least, keeping secret their frauds until the common purpose was fully consummated; also that, as a part of this continuing conspiracy, all three were jointly engaged in putting off on Christianson the forged note in question, for which they had obtained from him a conveyance of certain real estate. It does not appear distinctly from the bill of exceptions that the statements of Tall and Partello to Esklund were made after the note in question had been put off on Christianson, and on that ground alone the assignments might be held not well taken. But, assuming the statements were made after the uttering of the note, the evidence shows that the conspirators had not yet disposed of the property obtained from Christianson, and consequently had not yet divided the fruits of the fraud, or paid Esklund his commission for introducing Christianson, which defendant had promised to pay when the property was disposed of. It also appeared that, to induce Christianson to make the exchange, the conspirators had represented to him that they had a party who would cash the notes, and that they were still keeping him quiet by putting him off from day to day with various excuses when he came after the money. When matters were in this situation occurred the statements of Partello, or Partello and Tall, to Esklund, the admission of which in evidence is complained of. The substance of these (after inquiring of Esklund if he knew where Linstad was) was that they had signed Linstad's name to the papers, and wished to see him about it. The fair inference is that the object was to make the matter right in some way with Linstad, and thus cover up the evidence of forgery, as a means of assisting in successfully carrying out the objects of the conspiracy, which, as we have said, was not confined to the mere uttering of the forged note, but extended to the disposition and division of the profits of the crime. Hence, although the statements referred to a past act, so far as the mere uttering of the note was concerned, yet they had reference also to contemplated future acts in furtherance of the common design, and were made while the conspiracy was still pending, and its

object not yet fully consummated. The statements were therefore relevant and properly admitted. *State* v. *Glidden*, 55 Conn. 46, (8 Atl. Rep. 890;) *Stewart* v. *Hanson*, 35 Me. 506; *Clinton* v. *Estes*, 20 Ark. 216, 225; *Scott* v. *State*, 30 Ala. 503; *Card* v. *State*, 109 Ind. 415, (9 N. E. Rep. 591.)

Order affirmed.