## MASON ET AL. *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF ALASKA, SECOND DIVISION.

No. 604.   Submitted April 11, 1917.—Decided June 4, 1917.

The Fifth Amendment does not relieve a witness from answering merely on his own declaration or judgment that an answer might incriminate him; whether he must answer is determinable by the trial court in the exercise of its sound discretion; and unless there is reasonable ground, as distinct from a remote or speculative possibility, to apprehend that a direct answer may prove dangerous to the witness, his answer should be compelled.

In the absence of manifest error, the ruling of a trial judge upon a witness' objection that an answer may incriminate him, will not be reversed by this court.

Affirmed.

THE case is stated in the opinion.

*Mr. George B. Grigsby* for plaintiffs in error.

*The Solicitor General* and *Mr. Robert Szold* for the United States.

Mr. Justice McReynolds delivered the opinion of the court.

Plaintiffs in error were separately called to testify before a Grand Jury at Nome, Alaska, engaged in investigating a charge of gambling against six other men. Both were duly sworn. After stating that he was sitting at a table in the Arctic Billiard Parlors when these men were there arrested, Mason refused to answer two questions, claiming so to do might tend to incriminate him. (1) "Was there a game of cards being played on this particular evening at the table at which you were sitting?" (2) "Was there a game of cards being played at another table at this time?" Having said that at the specified time and place he, also, was sitting at a table, Hanson made the same claim and refused to answer two questions. (1) "If at this time or just prior to this time that yourself and others were arrested in the Arctic Billiard Parlors if you saw any one there playing 'stud poker' or 'pangingi'?" (2) "If at this same time you saw any one playing a game of cards at the table at which you were sitting?"

The foreman of the Grand Jury promptly reported the foregoing facts and the judge at once heard the recalcitrant witnesses; but as the record contains no detailed statement of what then occurred we cannot know the exact circumstances. The court, being of opinion "that each and all of said questions are proper and that the answers thereto would not tend to incriminate the witnesses," directed them to return before the Grand Jury and reply. Appearing there, Mason again refused to answer the first question propounded to him, but, half

yielding to frustration, said in response to the second, "I don't know." Hanson refused to answer either question.

A second report was presented by the foreman; the witnesses were once more brought into court; and after hearing evidence adduced by both sides and arguments of counsel they were adjudged in contempt. It was further ordered "that they each be fined in the sum of one hundred dollars, and that they each be imprisoned until they comply with the orders of the court by answering the questions." Immediately following this order they made answers, but these are not set out in the record. The fines are unpaid; and we are asked to reverse the trial court's action in undertaking to impose them because it conflicts with the inhibition of the Fifth Amendment that no person "shall be compelled in any criminal case to be a witness against himself."

During the trial of Aaron Burr, *In re Willie*, 25 Fed. Cas. No. 14,692e, pp. 38, 39, the witness was required to answer notwithstanding his refusal upon the ground that he might thereby incriminate himself. Chief Justice Marshall announced the applicable doctrine as follows: "When two principles come in conflict with each other, the court must give them both a reasonable construction, so as to preserve them both to a reasonable extent. The principle which entitles the United States to the testimony of every citizen, and the principle by which every witness is privileged not to accuse himself, can neither of them be entirely disregarded. They are believed both to be preserved to a reasonable extent, and according to the true intention of the rule and of the exception to that rule, by observing that course which it is conceived courts have generally observed. It is this: When a question is propounded, it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the

negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be."

The constitutional protection against self-incrimination "is confined to real danger and does not extend to remote possibilities out of the ordinary course of law." *Heike* v. *United States,* 227 U. S. 131, 144; *Brown* v. *Walker,* 161 U. S. 591, 599, 600.

In *The Queen* v. *Boyes* (1861), 1 B. & S. 311, 329, 330, Cockburn, C. J., said:

"It was also contended that a bare possibility of legal peril was sufficient to entitle a witness to protection; nay, further, that the witness was the sole judge as to whether his evidence would bring him into danger of the law; and that the statement of his belief to that effect, if not manifestly made *mala fide,* should be received as conclusive. With the latter of these propositions we are altogether unable to concur. . . . To entitle a party called as a witness to the privilege of silence, the Court must see, from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer. We indeed quite agree that, if the fact of the witness being in danger be once made to appear, great latitude should be allowed to him in judging for himself of the effect of any particular question: . . . A question which might appear at first sight a very innocent one, might, by affording a link in a chain of evidence, become the means of bringing home an offence to the party answering. Subject to this reservation, a Judge is, in our opinion, bound to insist on a witness answering unless he is satisfied that the answer will tend to place the witness in peril."

"Further than this, we are of opinion that the danger to be apprehended must be real and appreciable, with

reference to the ordinary operation of law in the ordinary course of things—not a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct. We think that a merely remote and naked possibility, out of the ordinary course of the law and such as no reasonable man would be affected by, should not be suffered to obstruct the administration of justice. The object of the law is to afford to a party, called upon to give evidence in a proceeding *inter alios*, protection against being brought by means of his own evidence within the penalties of the law. But it would be to convert a salutary protection into a means of abuse if it were to be held that a mere imaginary possibility of danger, however remote and improbable, was sufficient to justify the withholding of evidence essential to the ends of justice."

The statement of the law in *The Queen* v. *Boyes* was expressly approved by all the judges in *Ex parte Reynolds* (1882), 20 Ch. Div. 294. Similar announcements of it may be found in *Ex parte Irvine*, 74 Fed. Rep. 954, 960; *Ward* v. *State*, 2 Missouri, 120, 122; *Ex parte Buskett*, 106 Missouri, 602, 608.

The general rule under which the trial judge must determine each claim according to its own particular circumstances, we think, is indicated with adequate certainty in the above cited opinions. Ordinarily, he is in much better position to appreciate the essential facts than an appellate court can hold and he must be permitted to exercise some discretion, fructified by common sense, when dealing with this necessarily difficult subject. Unless there has been a distinct denial of a right guaranteed, we ought not to interfere.

In the present case the witnesses certainly were not relieved from answering merely because they declared

that so to do might incriminate them. The wisdom of the rule in this regard is well illustrated by the enforced answer, "I don't know," given by Mason to the second question, after he had refused to reply under a claim of constitutional privilege.

No suggestion is made that it is criminal in Alaska to sit at a table where cards are being played or to join in such game unless played for something of value. The relevant statutory provision is § 2032, Compiled Laws of Alaska, 1913, copied in the margin.[1]

The court below evidently thought neither witness had reasonable cause to apprehend danger to himself from a direct answer to any question propounded and, in the circumstances disclosed, we cannot say he reached an erroneous conclusion.

Separate errors are also assigned to the trial court's action in permitting counsel to introduce two documents in evidence; but we think the points are without substantial merit.

The judgment under review is

*Affirmed.*

---

[1] "Sec. 2032. That each and every person who shall deal, play, or carry on, open or cause to be opened, or who shall conduct, either as owner, proprietor or employee, whether for hire or not, any game of faro, monte, roulette, rouge-et-noir, lansquenet, rondo, vingt-un, twenty-one, poker, draw poker, brag, bluff, thaw, craps, or any banking or other game played with cards, dice, or any other device, whether the same shall be played for money, checks, credit, or any other representative of value, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than five hundred dollars, and shall be imprisoned in the county jail until such fine and costs are paid: *Provided,* That such person so convicted shall be imprisoned one day for every two dollars of such fine and costs: *And provided further,* That such imprisonment shall not exceed one year."