**In the Matter of Leslie H. ATTERBURY.
(A witness subpoenaed before the
Federal Grand Jury.)**

No. 15280.

United States Court of Appeals
Sixth Circuit.

April 18, 1963.

———◆———

Jacques M. Schiffer, New York City, for appellant; Hardy, Logan & Tross, Louisville, Ky., on the brief.

William E. Scent, U. S. Atty., and Robert D. Peloquin, Sp. Atty., Dept. of Justice, Louisville, Ky., for United States; Edward F. Harrington, Sp. Atty., Dept. of Justice, Louisville, Ky., on the brief.

Before CECIL, Chief Judge, MILLER, Circuit Judge, and PECK, District Judge.

BY THE COURT.

This is an appeal from the United States District Court for the Western District of Kentucky. The appellant, Leslie H. Atterbury, referred to as the witness, was adjudged to be in contempt of Court for refusing to answer questions before the Grand Jury. He was fined the sum of $500 and was ordered arrested and placed in custody, to remain in custody until he purged himself of the contempt by answering the questions of the Grand Jury.

The appellant was subpoenaed to appear before the Grand Jury of the United States District Court for the Western District of Kentucky, at Louisville, and bring original records of the Kentucky State Conference of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and all minutes, notes and memoranda pertaining to meetings of the Executive Board of Kentucky State Conference of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America for the period from November 1, 1958 to January 1, 1962.

The witness produced the records as required but refused to answer certain questions of the Grand Jury. He was taken before the District Judge where a hearing was held in the presence of the Grand Jury. The judge instructed him to answer the questions and warned him that he would be in contempt of court if he refused to do so. The witness was then taken back to the Grand Jury room where he again refused to give answers to the questions as they were propounded by the foreman of the Grand Jury.

Following this refusal the witness was brought before the District Judge and a more formal hearing was held. The Grand Jury was present in the court room. Counsel for the witness spoke at length on the rights of the witness to claim the privilege of the Fifth Amendment [1] to refuse to answer the questions on the ground that the answers might incriminate him. Counsel for the witness offered to call witnesses to show the connection between the questions asked and a possible violation of Federal Law. The witnesses he sought to call were the attorneys and representatives of the government who were conducting the investigation before the Grand Jury. The District Judge denied counsel's request to call such witnesses.

The judge had the court reporter read the questions that were asked before the Grand Jury and in turn propounded each of the questions to the witness with directions that he should answer it.[2]

[1]. "No person * * * shall be compelled in any criminal case to be a witness against himself * * *." U.S.Const., Amend. V.

[2]. The following questions were read by the reporter: "What is your occupation, Mr. Atterbury?" "How long have you lived in Louisville?" "Mr. Atterbury, are you employed by Teamsters Local 89?" The Court: "Have you paid your counsel a retainer fee? I think that question was asked you by the Grand Jury." The Court: "I will ask the witness, have you been employed as an assistant business agent for Local 89, Teamsters Local 89?" The Reporter: "Mr. Atterbury, at any time during the years 1956, 1957, 1958, 1959, 1960, 1961, and 1962, did you act as

The witness refused to answer any of the questions, with this explanation: "Your Honor, I have apprehensions, fears, that in answering those apparently incongrunous (sic) questions that may have no subversive or ulterior intent, I am afraid that I may be driven to my own disaster, to a relation of conceivably having been in violation of a or some laws of the United States. This is my own desire to invoke the Fifth Amendment. I am not trying to protect any other individual or anybody. I am worrying about myself."

The District Judge found the witness in contempt of court and said: "he has not shown any reasonable grounds which place me in a position to say that any grounds exist that would place him in a real and substantial danger of incrimination should he answer these questions." The sentence imposing a fine, and imprisonment until the witness purges himself of the contempt is according to law. Rule 42(a) Federal Rules Criminal Procedure; Section 401(1), Title 18 U.S.C.; Mason v. United States, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198; Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344.

■ The facts concerning the questions asked before the Grand Jury and the refusal of the witness to answer them are undisputed. The question presented is one of law. Is the hazard of self-incrimination of the witness, if he answers the proposed questions, confined to real danger or does it extend to remote possibilities out of the ordinary course of law? Heike v. United States, 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450; Brown v. Walker, 161 U.S. 591, 599, 600, 16 S.Ct. 644, 40 L.Ed. 819; Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118.

This test was stated fully in Mason v. United States, 244 U.S. 362, 365, 37 S.Ct. 621, 622, 61 L.Ed. 1198, where the court quoted with approval from The Queen v. Boyes (1861), 1 B. & S. 311, 329, 330. "'Further than this, we are of opinion that the danger to be apprehended must be real and appreciable, with reference to the ordinary operation of law in the ordinary course of things —not a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct. We think that a merely remote and naked possibility, out of the ordinary course of the law and such as no reasonable man would be affected by, should not be suffered to obstruct the administration of justice.'"

In the Hoffman case (341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118) the court said: "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." See also Blau v. United States, 340 U.S. 159, 161, 71 S.Ct. 223, 95 L.Ed. 170.

"The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. * * * However, if the witness, upon interposing his claim, were required to

recording secretary for meetings of the Kentucky State Conference of Teamsters?" "Mr. Atterbury, I am going to hand you what purports to be minutes of meetings of the Kentucky Conference of Teamsters that are marked Government Exhibits 28-F through Government Exhibit 28-R respectively and ask you to examine what has been marked for identification Government Exhibits 28-F through

Government Exhibits 28-R?" The witness stipulated that these documents appeared to be the documents that he examined in the Grand Jury session. The Reporter: "Mr. Atterbury, can you identify any portion of Government Exhibits 28-F through Government Exhibits 28-R which I have just handed you a few minutes ago?"

prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Hoffman v. United States, Id. at 486–487, 71 S.Ct. at 818–819, 95 L.Ed. 1118.

This rule in substantially the same form was announced by Chief Justice Marshall, as early as 1807, in the trial of Aaron Burr, in the Circuit Court for the District of Virginia. "It is the province of the court to judge whether any direct answer to the question which may be proposed will furnish evidence against the witness. If such answer may disclose a fact which forms a necessary and essential link in the chain of testimony, which would be sufficient to convict him of any crime, he is not bound to answer it so as to furnish matter for that conviction. In such a case the witness must himself judge what his answer will be; and if he say on oath that he cannot answer without accusing himself, he cannot be compelled to answer." In the course of his opinion the Chief Justice said: "The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims." Case No. 14692 e, United States v. Burr, In re Willie, 25 Fed.Cas. 38, 40.

■■ "This provision of the Amendment (Fifth) must be accorded liberal construction in favor of the right it was intended to secure." Hoffman, supra, at 486, 71 S.Ct. 818, 95 L.Ed. 1118; Counselman v. Hitchcock, 142 U.S. 547, 562, 12 S.Ct. 195, 35 L.Ed. 1110; Arndstein v. McCarthy, 254 U.S. 71, 72–73, 41 S.Ct. 26, 65 L.Ed. 138. "The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.'" Hoffman, Id. at 487, 71 S.Ct. at 818–819, 95 L.Ed. 1118. "Finally, in determining whether the witness really apprehends danger in answering a question, the judge cannot permit himself to be skeptical; rather must he be acutely aware that in the deviousness of crime and its detection incrimination may be approached and achieved by obscure and unlikely lines of inquiry." United States v. Coffey, 198 F.2d 438, 440, C. A. 3rd.

■ If a witness voluntarily answers questions involving criminating facts he waives the privilege as to details and can be compelled to testify further. Rogers v. United States, 340 U.S. 367, 373, 71 S.Ct. 438, 95 L.Ed. 344; Brown v. Walker, 161 U.S. 591, 597, 16 S.Ct. 644, 40 L.Ed. 819.

■ As hereinabove stated, counsel for the witness offered to call witnesses to show the connection between the questions asked and a possible violation of Federal law, which request was denied. No evidence was taken before the court concerning the subject matter of investigation before the Grand Jury. Nor did government counsel enlighten the court or the witness and his counsel on this matter. The Supreme Court pointed out in Hoffman v. United States, 341 U.S. 479, 486–487, 71 S.Ct. 814, 818–819, 95 L.Ed. 1118, that the implications of the question must be considered *"in the setting in which it is asked,"* and when so considered, it need only be evident that a responsive answer *"might* be dangerous because injurious disclosure could result." (Emphasis added.) We construe that case as also holding (p. 489, 71 S.Ct. p. 819, 95 L.Ed. 1118) that it is error for the Court not to consider facts offered by the witness giving the "setting" in which the question is asked so as to enable the Court to judge the implication which might exist from an answer made in such a setting. Under that ruling the District Judge was in error in the present case in not permitting the

witness to show the "setting" in which the questions were asked.

Answers to questions which at first blush may appear wholly innocuous, may, under certain existing circumstances, furnish a link connecting the witness with a criminal act and show that the danger apprehended by the witness was not fanciful. Such was the case in Hoffman where the witness refused to answer questions about his present occupation and when he had last seen a certain person and where that person was at the present time. In that case both the District Court and the Court of Appeals held that the witness was not entitled under the Fifth Amendment to refuse to answer the questions. The judgment was reversed by the Supreme Court, which stated in its opinion (p. 488, 71 S.Ct. p. 819, 95 L.Ed. 1118) that in the setting in which the questions were asked, it was not *perfectly clear* from a careful consideration of all the circumstances in the case, that the witness was mistaken, and that the answers could not *possibly* have such tendency to incriminate.

The liberality of the ruling in the Hoffman case and examples of its application are shown by the following cases in which judgments of convictions for refusing to answer apparently innocuous questions were reversed by the Supreme Court because of the *possibility* that the answer might link the witness with criminal activity.

In United States v. Greenberg, 192 F. 2d 201, C. A. 3rd, the Court of Appeals held that there was no suggestion in the record that Greenberg might be engaged in a business which violated the federal law, and in the absence of any contention on Greenberg's part that the mere disclosure of his business, as such, might tend to incriminate him of a federal crime, he was not entitled under the Fifth Amendment to refuse to state the business he was engaged in. The judgment was reversed by the Supreme Court on the authority of the Hoffman case, without opinion. Greenberg v. United States, 343 U.S. 918, 72 S.Ct. 674, 96 L.Ed. 1332.

In United States v. Singleton, 193 F. 2d 464, C. A. 3rd, the Court of Appeals held that Singleton was not entitled under the Fifth Amendment to refuse to answer the questions as to what business he was in, with reference to three individuals. The Court stated that the question did not indicate and a direct answer would not imply that the witness was engaged in an illegal business. The judgment was reversed by the Supreme Court on the authority of Greenberg and Hoffman cases, without opinion. Singleton v. United States, 343 U.S. 944, 72 S.Ct. 1041, 96 L.Ed. 1349.

In United States v. Trock, 232 F.2d 839, C. A. 2nd, the Court of Appeals held that Trock was not entitled under the Fifth Amendment to refuse to answer questions whether he knew certain individuals, whether he ever operated any business in New York, whether he ever registered in any trade names in New York, whether he ever had an office in 246 Fifth Avenue, New York City, whether he had ever stayed at the Hotel Victoria in New York City, and whether he could type. The court stated that there was no showing that the questions asked would "link" the witness with any criminal activity. The Supreme Court reversed the judgment on the authority of the Hoffman case, without opinion. Trock v. United States, 351 U.S. 976, 76 S.Ct. 1048, 100 L.Ed. 1493.

In Simpson v. United States, 241 F.2d 222, C. A. 9th, Wollam v. United States, 244 F.2d 212, C. A. 9th, and MacKenzie v. United States, 244 F.2d 712, C. A. 9th, the Court of Appeals held that the witness was not entitled to refuse to answer a question as to his present address and a question as to his present age. The Supreme Court reversed the judgment on the authority of the Hoffman case, and the confession of error by the Solicitor General, without opinion. Simpson v. United States, 355 U.S. 7, 78 S.Ct. 14, 2 L.Ed.2d 22.

See also: Quinn v. United States, 349 U.S. 155, 75 S.Ct. 668, 99 L.Ed. 964; Emspak v. United States, 349 U.S. 190,.

75 S.Ct. 687, 99 L.Ed. 997; Aiuppa v. United States, 201 F.2d 287, C. A. 6th.

In the present case, counsel for the witness made an argument on his behalf in connection with the background of the investigation in which the questions were asked. Counsel argued that a witness by the name of Stoy Decker, now serving a penal sentence for a crime involving union funds, was testifying before the Grand Jury concerning the commission of crimes against the laws of the United States by members of the Teamsters Union; that it was apparent and logical to the appellant-witness, herein, that anything Stoy Decker had to say would concern members of the Teamsters' organization in the supposed commission of crime under federal law; that part of Mr. Decker's testimony related to certain checks issued out of the Kentucky Conference of Teamsters; that one of the questions directed to the witness, now before the court, had to do with his obligations as a recording secretary of the union; that part of the money about which Decker had testified or would testify flowed through the Kentucky Conference and that the witness Atterbury, with whom we are concerned, felt that the questions were being used in a direct attempt to implicate him.

These statements about the background of this case are not part of the record on this review and a ruling cannot be made based upon them. But, in the oral argument, the government attorneys did not deny that the subject of investigation before the Grand Jury was as indicated by counsel for the witness. Accordingly, we believe it is fair to assume that counsel's statement about the background of this case has some factual support and that an opportunity should be afforded the witness to show that the "setting" in which the questions were asked was such as to make applicable the rulings in the Hoffman case and the other cases hereinabove referred to which have followed that ruling.

The judgment of the District Court is vacated and the case remanded to that Court for further hearing and reconsideration in the light of Hoffman v. United States, supra, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118. See: United States v. Greenberg, 341 U.S. 944, 71 S.Ct. 1013, 95 L.Ed. 1369, 192 F.2d 201, C. A. 3rd, 343 U.S. 918, 72 S.Ct. 674, 96 L.Ed. 1332.