**UNITED STATES of America,**
**Plaintiff-Appellee,**
v.
**Billy Gene COMPTON, Defendant-**
**Appellant.**

No. 16575.

United States Court of Appeals
Sixth Circuit.

Aug. 4, 1966.

Certiorari Denied Nov. 21, 1966.

See 87 S.Ct. 391.

J. W. Kirkpatrick, Memphis, Tenn., and E. J. Butler, Forrest City, Ark. (Maxwell D. Lucas, Jr., Memphis, Tenn., on the brief), for appellant.

Jere B. Albright, Memphis, Tenn. (Fred M. Vinson, Jr., Asst. Atty. Gen., Dept. of Justice, Criminal Div., Wallace H. Johnson, Peter R. Richards, Attys., Dept. of Justice, Washington, D. C., Thomas L. Robinson, U. S. Atty., Memphis, Tenn., on the brief), for appellee.

Before WEICK Chief Judge, PHILLIPS, Circuit Judge, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This is an appeal by Billy Gene Compton, defendant-appellant, from a judgment of conviction in the United States District Court for the Western District of Tennessee, Western Division. Compton, whom we will call defendant, was charged in a three count indictment with a violation of Section 1952,[1] Title 18, U.S.C. Count one charged the substantive offense and, in brief, was to the effect that the defendant traveled in interstate commerce from the State of Arkansas to the Western District of Tennessee with intent to promote, manage and establish a gambling business in the State of Tennessee in violation of the laws of that state. Count two charged that the defendant induced David McElduff to commit the same offense. Count three was a similar charge in relation to the inducement of Donald Crossley.

The case was tried to a jury and the defendant was found guilty on count one. The trial judge directed a verdict of acquittal on count three and the jury returned a verdict of not guilty on the second count. Judgment was entered upon the verdict and the defendant was sentenced to a term of imprisonment for five years and to pay a fine of $5,000. This appeal followed.

The facts for the purpose of this appeal may be briefly stated. The defendant moved his family from West Memphis, Arkansas, to Shelby County, Tennessee, on or about November 20, 1963. A few days later he took over the operation of a gambling club, which he called Valley Club, in Tipton County, Tennessee. The principal issue at the trial was whether the defendant in moving or traveling to Tennessee had the intent to engage in a gambling business in violation of the laws of Tennessee. There was sufficient circumstantial evidence from which the jury could infer this intent. No assignment of error is based on the insufficiency of the evidence to support the verdict. We will not further discuss the evidence. A similar case in which we sustained a verdict of guilty was recently before this Court. United States v. Compton, 6 Cir., 355 F.2d 872, cert. den. 86 S.Ct. 1571.

The defendant states ten questions or assignments of error as being involved on this appeal. Six of them relate to the conduct of the trial and four relate to the constitutionality of Section 1952, Title 18, U.S.C. We find no merit to the constitutional questions. Neither do we find that the trial judge exceeded the

[1] "(a) Whoever travels in interstate or foreign commerce * * * with intent to—
　(1) distribute the proceeds of any unlawful activity; or
　　*　　*　　*　　*　　*
　(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), * * * and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
　(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling * * * offenses in violation of the laws of the State in which they are committed or of the United States, * * *"

**4**

bounds of propriety of a trial judge in asking questions of witnesses or that he abused his discretion in this respect.

One assignment of error relates to an altercation witness James E. Knight had with the defendant at Valley Club. An argument ensued between them concerning the way Knight was throwing the dice and the defendant ejected Knight from the Club. There was a scuffle and the defendant possibly had a chain in his hand. One of the issues in the case was whether the defendant was operating a gambling club. The incident over which the argument arose was pertinent to that issue. The argument and the ultimate ejectment were part of one incident and so closely related to the issue that it could not be separated into two parts. We find no prejudicial error as a result of this altercation and the alleged assault on the witness Knight.

Another assignment of error relates to a question government counsel asked the defendant on cross examination concerning his brother's operation of a club. The trial judge ruled that this could have a bearing on the question of intent of the defendant. There may have been a very thin line here between competency and incompetency but we cannot say that the trial judge abused his discretion in admitting the testimony.

An assignment of error by which it is claimed that the appellant was deprived of a fair trial relates to a statement made by one of government counsel in his argument to the jury concerning the refusal of witness McElduff to answer a question on the ground of self incrimination. Since the appellant was acquitted on the second count of the indictment relating to McElduff, we find no prejudicial error on this assignment.

We find no merit to the claim that the trial judge did not define the Tennessee statutes which the appellant was accused of violating. These statutes were read to the jury. They were clear and understandable. In the record before us, it appears that no request was made to the trial judge to define them further.

Finally it is claimed that the trial court erred in permitting government counsel to call witnesses whom they knew would refuse to testify on the ground of self incrimination. This is known in common parlance as "taking the Fifth." The Fifth Amendment to the Constitution of the United States provides, "No person * * * shall be compelled in any criminal case to be a witness against himself, * * *"

This assignment of error relates to two witnesses called by the government, Keyes Outland and Charles Cleveland Belt, Jr. These witnesses appeared in court with their lawyers who advised the court and government counsel that the witnesses would claim their privilege against self incrimination and would refuse to testify. Notwithstanding this advice the witnesses were called to the witness stand.

This is a trial device frequently used by government counsel in the trial of criminal cases. This provision of the Fifth Amendment against self incrimination, which we will refer to as a privilege, is a personal one. Rogers v. United States, 340 U.S. 367, 371, 71 S.Ct. 438, 95 L.Ed. 344, rehearing den. 341 U.S. 912, 71 S.Ct. 619, 95 L.Ed. 1348; United States v. White, 322 U.S. 694, 699, 64 S.Ct. 1248, 88 L.Ed. 1542; United States v. Goldfarb, 328 F.2d 280, 282, C.A. 6, cert. den. 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746. The witness can claim it only for himself and to a large extent the witness must be the final judge of whether an answer to a propounded question would tend to subject him to prosecution (In Re Atterbury, 316 F.2d 106, 109, C.A. 6; Case No. 14,692e, United States v. Burr (In re Willie), 25 Fed. Cas. pp. 38, 40; United States v. Coffey, 198 F.2d 438, 440, C.A. 3) under either federal or state law. Murphy v. Waterfront Comm'n, 378 U.S. 52, 77–78, 84 S.Ct. 1594, 12 L.Ed.2d 678. The witness has a right to seek legal counsel and to have his lawyer accompany him to court

This privilege cannot be used by a witness as a shield to refuse to answer all questions such as the name and address, for instance. Rarely could such answers subject a witness to prosecution. The witness can be required to answer pertinent questions where it appears obvious that no self incrimination would be involved. Within limits the trial judge may require the witness to answer a question where it can be reasonably determined that there would be no possible relationship to criminal prosecution. Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118; Mason v. United States, 244 U.S. 362, 365, 37 S.Ct. 621, 61 L.Ed. 1198; Enrichi v. United States, 212 F.2d 702, 703–704, C.A. 10. This matter may be and frequently has been ultimately determined by contempt proceedings. Hoffman v. United States, supra; Rogers v. United States, supra; United States v. White, supra; In Re Atterbury, supra.

Government counsel need not refrain from calling a witness whose attorney appears in court and advises court and counsel that the witness will claim his privilege and will not testify. However, to call such a witness, counsel must have an honest belief that the witness has information which is pertinent to the issues in the case and which is admissible under applicable rules of evidence, if no privilege were claimed. It is an unfair trial tactic if it appears that counsel calls such a witness merely to get him to claim his privilege before the jury to a series of questions not pertinent to the issues on trial or not admissible under applicable rules of evidence.

It is not necessary to analyze here all of the questions asked both of the witnesses with whom we are concerned. It will suffice to consider principally one phase of the examination of Charles Cleveland Belt, Jr.

After the name and address the first two questions asked the witness were whether he knew certain F.B.I. agents and whether he gave an oral interview to Norman Casey and Special Agent Canale on February 2, 1964. The next question was,

"Mr. Belt, have you ever made this statement, or this statement in fact or in substance, to any person: That you had made several thousand dollars in the operation of the Five Gables night club in Shelby County— * * * and had also made money in the operation of a liquor store in Memphis, Tennessee?"

To all of these questions the witness claimed the privilege against self incrimination. Government counsel said, "I believe if you will let me finish, we will get through a little faster."

Then, under the guise of a question, counsel proceeded to apparently read from a purported statement given by the witness to Norman Casey and Special Agent Canale. The "question" reads as follows:

"Did you open a gambling establishment in Tipton County, Tennessee at the site of the old Bon Ton Club, and operate it afterwards for almost a month, around November 13, 1963, to the termination of that activity was caused by the loss of your money? That after you lost your money there, principally from the gambling up there, the shooting of dice, you tried to salvage what you could from the place, you removed ice machines, chairs, tables and couches which you had brought and placed in that establishment. And there has been a lawsuit between you and Red Nix as to whether or not you could remove the carpet from the floors of that gambling establishment. That you went to the Paddock Club prepared to remove the rug with a writ of replevin—a writ of replevin— and that you had gone before the Tipton County Judge, and the Judge had told you it might be necessary to get a writ of replevin in order to remove the rug, and that you went and got it in order to remove the rug.

"That you were accompanied there by Sheriff Ben Billings and Constable

**6**

Doug Williams. That when you arrived at the club, Billy Gene Compton was at the club, as was Keyes Outland."

Counsel objected to the reading of the statement and the trial judge sustained the objection.

 Counsel from the beginning treated this witness as a hostile witness under cross examination. His approach to questioning the witness was improper. The witness was called by the government and, if he had knowledge pertinent to the issues, counsel should have brought it out by direct questions without reference to the statement given to the F.B.I. He might ultimately have been able to use the statement for impeachment purposes. If proper questions had been asked and the claim of privilege had been sustained, counsel would never have had occasion to use the statement.

Further the subject matter of the statement is wholly unrelated to the crime charged against the appellant. We are unable to see any connection between the operation of the Five Gables night club in Shelby County and the Valley Club in Tipton County operated by the defendant. We can see no possible relation between the issues in the case at bar and the witness making money out of the operation of a liquor store in Memphis. The reading, under the guise of a question of the long statement alleged to have been given to the F.B.I. Special Agent was not only improper from a procedural point of view but the substance was incompetent as not being pertinent to the issues in the case. Only the last sentence with reference to whether Billy Gene Compton was at the club when he arrived there might have some bearing on the case. This could have been asked of the witness in a simple direct question.

Other questions were equally improper. For instance:

"Did you lose twenty-five thousand dollars in a gambling establishment in Tipton County, Tennessee in November of 1963—October and November?" and "While you were there operating the Valley Club in Tipton County, Tennessee, in November and October of '63, did you maintain any firearms on the premises?"

 No motion for mistrial was made and the question was not raised on motion for new trial. We conclude, however, that the examination of the witnesses Outland and Belt was prejudicial to the defendant and that this deviation from proper trial procedure constituted plain error and that it affected the defendant's substantial rights. (Rule 52, F.R.Cr.P.) Cf. United States v. Terry, 362 F.2d 914, No. 16768, decided by this Court July 6, 1966, in which we sustained the practice adopted by the trial judge in permitting the examination of a witness whom the Court was advised would refuse to testify on the ground of self incrimination.

 Counsel for the government argue:

"A reading of the record as a whole shows beyond doubt that all points relevant to Compton's conviction on Count One of this indictment were established by other evidence, and the jury need have drawn no inferences whatever from the refusals to answer by Outland and Belt in order to convict."

There may be some merit to this argument, but counsel should have thought of this before indulging in this type of practice. We cannot ignore prejudicial testimony merely because guilt seems obvious. We cannot tell what may tip the scales in the mind of a jury.

By reason of this prejudicial trial tactic we must reverse the judgment of the District Court and remand the case for a new trial.