Charles FEMIA, Richard F. MacDonald,

v.

Donald C. McLAUGHLIN, Edward F. Burke, Jr., Charles A. Coppola.

Civ. A. No. 85–0532–S.

United States District Court, D. Massachusetts.

June 27, 1989.

Paul A. Manoff, Levine & Manoff, Boston, Mass., for plaintiffs.

Paul F. Kelly, Segal, Roitman & Coleman, Boston, Mass., for defendants.

PLAINTIFF'S (sic) MOTION FOR AN ORDER COMPELLING WITNESS TO ANSWER DEPOSITION QUESTIONS AND FOR COSTS—FRCP 37(a) (#58)

ROBERT B. COLLINGS, United States Magistrate.

### INTRODUCTION

The plaintiffs, three members of Local Lodge 1726, International Association of

Machinists and Aerospace Workers, filed this action on February 4, 1985 pursuant to 29 U.S.C. § 501(b). The defendants are the President (McLaughlin), Financial Secretary (Burke) and Recording Secretary (Coppola) of the Local Lodge.

The Complaint alleges that the defendants, "their fiduciary obligations notwithstanding, have for a period covering several years, personally spent or caused to be spent funds belonging to Local Lodge No. 1726 for improper purposes and not in compliance with the bylaws of the Local Lodge." It is further alleged that:

> These expenditures included *inter alia,* union funds disbursed to relatives or neighbors of defendants or other third persons who have no connection with the Local Lodge and funds distributed to defendants themselves for personal purposes which funds defendants were not entitled to under the bylaws of Local Lodge 1726. The improper expenditures were made in the years 1979–1982 among others.

In their first prayer for relief, the plaintiffs demand "[t]hat the defendants be required to account for all expenditures made or received by them, or at their request or direction, out of union funds for the years 1979 to the present time."

It is to be noted that in May, 1988, I ordered the defendant McLaughlin to produce documents which would enable the plaintiffs to determine whether the illegal practices complained of continued beyond 1982 through the calendar year 1986. By the terms of my order, the documents had to be produced by June 17, 1988.

## THE INSTANT MOTION

Defendant Coppola's deposition was noticed in this case; pursuant to the notice, Mr. Coppola gave testimony on January 9, 1987. The deposition was not completed; it was agreed that the deposition could be "re-commenced if the plaintiff's [sic] feel it is necessary to do so."

When the deposition was continued on July 26, 1988, Mr. Coppola refused to answer any further questions relying on his privilege against self-incrimination. The asserted basis for the invocation of the privilege on July 26, 1988 was that, at the behest of the plaintiffs, the Department of Labor on or about July 1, 1988, had begun a criminal investigation into whether the defendants had embezzled or converted union assets in violation of 29 U.S.C. § 501(c) in connection with the same transactions which form the basis of the instant civil suit.

Plaintiffs move to compel Mr. Coppola's testimony, arguing that his prior testimony operated as a waiver of the privilege and that, in any event, he can be questioned about events occurring more than five years ago because, as to those events, the criminal statute of limitations has run.

## THE FIFTH AMENDMENT PRIVILEGE IN CIVIL CASES

A little over three weeks ago, the Second Circuit summarized the law with respect to the assertion of the privilege against self-incrimination in a civil case. Judge Pierce wrote:

> The fifth amendment privilege against self-incrimination is one of our most fundamental rights as citizens. Moreover, because it is such an important right, the privilege against self-incrimination can be invoked in *any* proceeding where the witness "reasonably believes that his testimony could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States,* 406 U.S. 441, 444–45 [92 S.Ct. 1653, 1656–56, 32 L.Ed.2d 212] (1972). In keeping with its desire to safeguard fifth amendment rights, the Supreme Court has explicitly held that a district court cannot compel a witness in a civil action "to answer deposition questions over a valid assertion of his Fifth Amendment rights." *Pillsbury Co. v. Conboy,* 459 U.S. 248, 256–57 [103 S.Ct. 608, 613–14, 74 L.Ed.2d 430] (1983); *see National Life Insurance Co. v. Hartford Accident & Indem. Co.,* 615 F.2d 595, 597 (3 Cir., 1980) ("It is undisputed that the fifth amendment privilege against self-incrimination may be assert-

ed in a civil action as well as a criminal action.")

The right not to answer potentially incriminating questions in a civil or criminal proceeding, however, is not absolute. The prohibition of compelling the testimony of a witness in any setting is predicated upon there being a real danger that the testimony might be used against the witness in later criminal proceedings. As Justice Blackmun noted in his concurrence in *Pillsbury*, "[i]t is black-letter law that a witness cannot assert a Fifth Amendment privilege not to testify if the testimony cannot possibly be used as a basis for, or in aid of a criminal prosecution against the witness." 459 U.S. at 273 [103 S.Ct. at 622] (quoting *Brown v. Walker*, 161 U.S. 591, 597 [16 S.Ct. 644, 647, 40 L.Ed. 819] (1896).

*Andover Data Services, etc. v. Statistical Tabulating Corp.*, 876 F.2d 1080, 1082 (1989).

In addition to these principles, it is important to recall that the Supreme Court has written that the privilege against self-incrimination as embodied in the fifth amendment "must be accorded liberal construction." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951) (citations omitted). *See also In Re Kave*, 760 F.2d 343, 354 (1 Cir., 1985). Thus, the Court in the *Hoffman* case noted that:

The privilege afforded not only extends to answers which in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. *(Patricia) Blau v. United States,*, 340 U.S. 159 [71 S.Ct. 223, 95 L.Ed. 170] (1950). But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. *Mason v. United States*, 244 U.S. 362, 365 [37 S.Ct. 621, 622, 61 L.Ed. 1198] (1917), and cases cited.

* * * * * *

To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. *Hoffman, supra*, 341 U.S. at 486–87, 71 S.Ct. at 818–19.

The corollary, however, is that:

... [I]f by reason of the statute of limitations there remains *no possibility* that a prosecution of the witness could result from or be assisted by his answers to questions, he is not justified in refusing to answer. *Brown v. Walker*, 1896, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819; *Hale v. Henkel*, 1906, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652.

*United States v. Goodman*, 289 F.2d 256, 259 (4 Cir., 1961).

## THE ASSERTION OF THE PRIVILEGE IN RESPONSE TO QUESTIONS REGARDING EVENTS WHICH OCCURRED MORE THAN FIVE YEARS AGO AND AS TO WHICH THE STATUTE OF LIMITATIONS HAS RUN

■ Against this legal background, it is obvious that Mr. Copolla can invoke the privilege against self-incrimination as to transactions involving the Local Lodge during his tenure as Recording Secretary, even if the transactions occurred more than five years ago. The Complaint charges a continuing pattern of improper expenditures "in the years 1979–1982 among others;" evidence as to events occurring more than five years ago might very well be admissible at a criminal trial charging acts of embezzlement or conversion within the past five years even though Mr. Coppola would not be charged with embezzlements or conversions more than five years ago. *See* Rule 404(b), F.R.Evid. "[E]vidence of other bad acts may be relevant to show, say, a defendant's intent, or his knowledge, *or the existence of a scheme.*" *United States v. Rodriquez–Estrada*, 877 F.2d 153, 155 (1 Cir.1989) (emphasis supplied). *See* Heidt, *The Conjurer's Circle—The Fifth Amendment Privilege In Civil Cases*, 91 Yale L.J. 1062, 1079. Thus, it

cannot be said that there is no possibility that such evidence might be used in such a criminal prosecution. As the First Circuit has observed:

> To invoke the privilege, it is not necessary that the witness show that his testimony would be certain to subject him to prosecution, or that it will prove the whole crime, if unaided by other evidence. It is enough that there is a reasonable possibility of prosecution, and if the testimony, although falling short of proving the crime in its entirety, will tend to a conviction when combined with evidence from other sources.

*In Re Kave, supra,* 760 F.2d at 354. (citations omitted).

In the instant case, the plaintiffs do not controvert Mr. Copolla's statement that the Department of Labor has begun a criminal investigation into his activities *vis a vis* the union. I find, therefore, that there is a reasonable possibility of prosecution and that the testimony which Mr. Coppolla would give at a resumed deposition respecting his activities *vis a vis* the union from 1979 through 1986 will tend to a conviction either independently or in combination with other evidence.

## DOES MR. COPPOLA'S TESTIMONY AT THE FIRST DAY OF HIS DEPOSITION IN JANUARY, 1987 OPERATE AS A WAIVER OF THE PRIVILEGE AGAINST SELF–INCRIMINATION?

The rule with respect to the circumstances in which a waiver of the privilege against self-incrimination is found to have been made is set out succinctly in the case of *United States v. LaRiche,* 549 F.2d 1088 (6 Cir., 1977) *cert. denied* 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 383 and 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 452 (1977):

> Although an incriminating fact usually waives the privilege as to details, *see Rogers v. United States,* 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1950), waiver does not occur where further disclosure carries a risk of incrimination beyond that raised by the previous testimony. *See United States v. Seavers,* 472 F.2d 607, 610–11 (6th Cir.1973);

*In Re Master Key Litigation,* 507 F.2d 292, 294 (9th Cir.1974).

*Id.* at 1096.

■ Thus, whether there has been a waiver, and to· what extent, depends on what Coppola's testimony was at his January 9, 1987 deposition. A copy of the 166–page deposition has not been filed. However, plaintiffs' counsel describes the testimony as follows:

> At his deposition, Coppola testified fully in response to the questions asked him which concerned the performance of his duties as Recording Secretary during 1979–1982 and specifically, several financial transactions during that period which resulted in one or more defendants obtaining union funds.

Plaintiffs' Memorandum, Etc. (#60) at p. 2. If this is an accurate statement, it seems clear that whatever his testimony about events occurring in the 1979–1982 time frame, Mr. Coppola's testimony did not effect a waiver of the privilege against self-incrimination about events occurring after 1982. *Usery v. Brandel,* 87 F.R.D. 670, 683 (W.D.Mi., 1980).

■ Whether or not there has been a waiver of the privilege as to events and transactions in the time period 1979–1982 depends on the content of that testimony. If at the deposition, Mr. Coppola voluntarily answered as to materially criminating facts, he cannot invoke the privilege to decline to answer questions seeking disclosure of the details. *Rogers v. United States,* 340 U.S. 367, 373–74, 71 S.Ct. 438, 442–43, 95 L.Ed. 344 (1951). However, if there has been no previous admission of guilt or testimony of incriminating facts, there can be no waiver of the privilege against self-incrimination. Since the transcript of the deposition has not been afforded to me, I have no way of knowing whether Mr. Coppola testified as to materially criminating facts at his deposition. On this basis alone, the motion to compel must be denied.

If Mr. Coppola at his deposition did testify to materially criminating facts, the Court would be required to examine each later question to which the privilege is as-

serted to determine "... whether the question presented a reasonable danger of further crimination in light of all the circumstances including any previous disclosures." *Id.* Thus, the Court in the case of *In Re Master Key Litigation,* 507 F.2d 292 (9 Cir., 1974), wrote:

> Whatever may be the rule with respect to such a "waiver" [of the privilege against self-incrimination] by a criminal defendant who elects to take the stand in his own behalf, *See Brown v. United States,* 356 U.S. 148, 155–6, 78 S.Ct. 622 [626–27] 2 L.Ed.2d 589 (1958), an ordinary witness may pick the point beyond which he will not go, and refuse to answer any questions about a matter already discussed, even if the facts already revealed are incriminating, so long as the answers sought may tend to *further* incriminate him. *Shendal v. United States,* 312 F.2d 564, 566 (9 Cir.1963). *See Hashagen v. United States,* 283 F.2d 345, 349 (9 Cir.1960).
>
> *Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951) ... does not hold to the contrary. That case merely invoked the well-accepted rule that where incriminating facts have been revealed without claiming the privilege, the privilege cannot then be invoked to avoid disclosure of the details. The Court then held, however, that "[a]s to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a 'real danger' of further crimination." *Id.* at 374, 71 S.Ct. at 442 (footnote omitted).

*Id.* at 294.

■ Accordingly, there are two reasons why the Court cannot determine whether Mr. Coppola, by testifying at his deposition on January 9, 1987, has waived his privilege against self-incrimination, and if so, to what extent. The first is that since the transcript of that deposition has not been filed with the Court, I have no way of knowing whether Mr. Coppola testified to any "criminating facts" at the deposition.

■ The second is that at the continued deposition of Mr. Coppola on July 26, 1988, no specific questions were put to Mr. Coppola to which he asserted the privilege. The six-page transcript of that deposition, which is attached to Plaintiffs' Memorandum, Etc. (#60), reveals that Mr. Coppola's counsel stated that Mr. Coppola would invoke the privilege as to any questions respecting the case and plaintiffs' counsel went no further. The colloquy concluded as follows:

> MR. MANOFF [Plaintiffs' counsel]: So then I assume, then, that any question that is at all relevant to this lawsuit Mr. Coppola is going to refuse to answer, he's going to assert a privilege against self-incrimination. The only thing he would not assert such privilege to would be a question that would be irrelevant to this lawsuit.
>
> MR. KELLEY [Coppola's counsel]: That's right.
>
> MR. MANOFF: Therefore, there is no further purpose of my asking any further questions today of Mr. Coppola. We will suspend the deposition. I will seek a court order compelling Mr. Coppola to reappear and answer questions and to not assert his privilege against self-incrimination.
>
> The deposition is hereby suspended.

Plaintiffs' counsel got it wrong. Any challenge to the assertion of the privilege against self-incrimination on the ground of waiver requires that all questions to which answers are sought be put to the witness and the witness be forced to either answer the question or assert the privilege. If the privilege is asserted, the Court must look at "each question to which a claim of privilege is directed ... [and] determine whether the answer to that particular question would subject the witness to a 'real danger' of further crimination". *Rogers v. United States, supra,* 340 U.S. at 374, 71 S.Ct. at 442 (footnote omitted).

Put simply, plaintiff's motion to compel testimony on the ground that the privilege against self-incrimination has been waived is premature.

432

## CONCLUSION

For all of the aforesaid reasons, it is ORDERED that Plaintiff's (sic) Motion For An Order Compelling Witness To Answer Deposition Questions And For Costs— FRCP 37(a) (#58) on the ground that the statute of limitations has expired be, and the same hereby is, DENIED.

It is FURTHER ORDERED that Plaintiff's (sic) Motion For An Order Compelling Witness To Answer Deposition Questions And For Costs—FRCP 37(a) (#58) on the ground that the defendant Coppola has waived the privilege be, and the same hereby is, DENIED without prejudice.