Agnes, A.J.
The Plaintiffs, Ivan Pontes (Pontes) and Lucia Prodelik Pontes, brought this action against New England Power Company, Massachusetts Electric Company, National Grid USA, and Pennsylvania Tower Painting Co. (collectively the Grid defendants) alleging that as a consequence of their negligent failure to properly warn Pontes, Pontes sustained injuries. The parties are now before this Court on the Grid defendants’ motion to strike objections made by the plaintiffs’ counsel during a deposition, to compel Pontes to answer the questions objected to, and the plaintiffs’ request for a protective order. For the following reasons, the grid defendants’ motions are DENIED and the plaintiffs’ request for a protective order is ALLOWED.
BACKGROUND
This case arose out of an accident that occurred on July 12, 2001, in Leicester, Massachusetts. While painting an electrical high tension tower on behalf of his employer Pennsylvania Tower Painting Co., Pontes was electrocuted, and as a result suffered, among other things, full thickness and partial thickness second- and third-degree burns over thirty to forty percent of his body. He has had to undergo numerous operations as a result of this injury and is expected to require additional surgeries. As a result of this injuiy Pontes alleges that he is incapable of performing any type of work, and in all likelihood will never be able to work again. As of July 23, 2003, Pontes had received $430,554.00 in workers’ compensation benefits.
On January 28, 2004, Pontes appeared for a deposition. Counsel for the Grid defendants asked Pontes several questions regarding his immigration status. The plaintiffs’ counsel objected to those questions based on Pontes’ Fifth Amendment right against self-incrimination, and instructed Pontes not to answer. The motion before this Court followed.
DISCUSSION
I. Fifth Amendment Right Against Self-Incrimination
This Court must first determine whether Pontes’ claim of privilege is justified. A witness may refuse to testify based on their invocation of the privilege “unless it is ‘perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such tendency’ to incriminate.” Commonwealth V. Funches, 379 Mass. 283, 289 (1979) (emphasis in original), quoting Hoffman v. United States, 341 U.S. 479, 488 (1951). ‘The privilege afforded not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute.” Funches, supra, 379 Mass, at 289, quoting Ullmann v. United States, 350 U.S. 422, 429 (1956). The witness must have reasonable cause to apprehend danger from a direct answer. Mason v. United States, 244 U.S. 362, 365 (1917). It is for the judge, rather than the witness and the attorney to determine whether silence is justified. Commonwealth v. Martin, 423 Mass. 496, 502 (1996).
Here, Pontes remained silent after being posed questions regarding his immigration status. Fear of *198 deportation is not a valid basis for asserting the privilege because deportation proceedings are civil. INS v. Lopez-Mendoza, 468 U.S. 1032, 1038-39 (1984). However, it is a crime under the Immigration Reform and Control Act of 1986 (IRCA) for an unauthorized alien to subvert the employer verification system by tendering fraudulent documents. 8 U.S.C. §1324c(a). The IRCA prohibit aliens from using or attempting to use “any forged, counterfeit, altered, or falsely made document” or “any document lawfully issued to or with respect to a person other than the possessor” for purposes of obtaining employment in the United States. 8 U.S.C. §1324c(a)(l)-(3); Hoffman Plastic Compounds v. National Labor Rel. Bd., 535 U.S. 137, 148 (2002).
While Pontes’ immigration status on its own could not possibly violate the above IRCA provisions, they undoubtedly could furnish a link in the chain of evidence needed to prosecute. See Funches, supra, 379 Mass, at 289. Pontes’ fear of this prosecution if he directly answers the questions posed to him is entirely reasonable. See Mason, supra, 244 U.S. at 365. Pontes’ silence in the face of questions regarding his immigration status was therefore entirely justified.
II. Relevance
In addition to determining if Pontes has a valid privilege, this Court must examine whether Pontes’ immigration status is relevant to any claim or defense in the case at bar; in other words if the information is discoverable. The Grid defendants, relying on Hoffman Plastics, contend that Pontes’ immigration status is relevant to the calculation of damages for impaired earning capacity because if Pontes is an illegal alien he would not be entitled to work in the United States.
Therefore, his earning capacity would be sufficiently diminished. Pontes, however, states that his immigration status is not relevant to the proceedings because the circumstances of the present case do not fit within the parameters of Hoffman Plastics.
Impaired earning capacity is based on the injured plaintiffs lessened ability to work. Shea v. Rettie, 287 Mass. 454, 456 (1934). This lessened ability to earn is not necessarily based on what job the injured plaintiff had previously done or the job that the individual intended to do in the future, but is instead based on the amount by which earning capacity is diminished due to the defendant’s tortious conduct.[3] Id. What the injured plaintiff may have earned in the future either through work or through other forms of compensation is simply irrelevant.
Since the focus is on the effect of the work injury on earning capacity the plaintiffs alien status is irrelevant to the inquiry. The relevant issue in calculating diminished earning capacity is the effect of the work injury on earning capacity, rather than the effect of the employee’s alien status on work capacity. See Moran v. Dickinson, 204 Mass. 559, 562 (1910); see also Medellin, Board No. 03324300 (Mass. Dept. Ind. Acc.); Brambila, Board No, 6734092. (Mass. Dept. Ind. Acc., August 22, 1997).
The Grid defendants, however, assert that the Supreme Court’s holding in Hoffman Plastics causes Pontes’ immigration status to be relevant to the calculation of diminished earning capacity. In Hoffmann Plastics, the Supreme Court held that the National Labor Relations Board’s award of backpay to an illegal immigrant was improper because it would trench upon the provisions of the IRCA. 535 U.S. at 150-51. By not allowing backpay for any of the time after the alleged wrongful firing the Supreme Court was seeking to prevent the continued illegal employment of illegal immigrants. Id.
The policy issues addressed in Hoffman Plastics do not apply in this case. See id. Here the policy implicated is not that of preventing an incentive for illegal aliens to gain and keep employment in violation of the IRCA. Instead, the policy in the present case relates to decreasing the incentive for employers themselves to violate the IRCA. See id. If employers know that they will be potentially less financially responsible for a workplace injury as long as the injured party is an illegal immigrant they will be more inclined to hire illegal immigrants for dangerous positions. See id. Employers will also have less incentive to provide adequate workplace safety measures for jobs they intend to fill with illegal immigrants. See id. This affects illegal as well as citizen employees. Preventing these types of economic incentives is one of the goals of the IRCA. See Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 893 (1984) (applying provisions of National Labor Relations Act to illegal aliens to lessen employer’s economic incentive to hire them); Flores v. Amigon, 233 F.Sup.2d 462, 464 (2002) (enforcing Fair Labor Standards Act provisions requiring payment of proper wages reduces incentive to hire undocumented alien). The policy rationale behind the Hoffman Plastics decision affects its applicability to the set of facts before this Court. Accordingly, Hoffman Plastics does not cause Pontes’ immigration status to become relevant to the proceedings.
Moreover, even if discovery of Pontes’ immigration were relevant, which it clearly is not, the risk of injury to Pontes if such information were disclosed far outweighs the need for its disclosure. See U.S. Trust Co. of New York v. Herriott, 10 Mass.App.Ct. 313, 316-17 (1980); Liu v. Donna Karan International, Inc., 207 F.Sup.2d 191, 192-93 (2002).
ORDER
For the aforementioned reasons the Grid defendants’ motion to strike objections made by the plaintiffs’ counsel during a deposition and to compel Pontes to answer the questions objected to are DENIED and the plaintiffs’ request for a protective order concerning Pontes’ immigration status is ALLOWED.

For example, under the so called “collateral-source rule” money received from outside sources to compensate a plaintiffs injuries do not reduce a defendant’s liability for impaired earning capacity. See Corsetti v. Stone Co., 396 Mass. 1, 16-17 (1985); Goldstein v. Gontarz, 364 Mass. 800, 808-09 (1974). Accordingly, in a case where a plaintiffs damages is calculated to be $10,000.00, and her insurance paid all of those damages, the defendant in that case would still be liable for their own tortious conduct. The emphasis is on the conduct and not other external factors.